**IN THE TWENTY FIRST JUDICIAL CIRCUIT
COUNTY OF ST. LOUIS
STATE OF MISSOURI**

JEANNIE K. MAY,                )
                                    )
      Plaintiff,               )
                                      )
vs.                             ) Cause No:  14SL-CC00499
                                    )
                                    ) Div.: 4
NATIONSTAR MORTGAGE, LLC    )
                                    )
      Defendant.            )

**PLAINTIFF'S FIRST AMENDED VERIFIED PETITION
FOR DAMAGES AND INJUNCTIVE RELIEF**

COMES NOW Plaintiff Jeannie K. May, by and through counsel, pursuant to Missouri Court Rule 55.33(a) and amends as a matter of course her Petition against Defendant Nationstar Mortgage, LLC (hereinafter referred to as "Nationstar") as follows:

**PRELIMINARY STATEMENT**

1.     This is an action filed by the Plaintiff, Jeannie K May, a 59 year old single person who resides in her home located in Overland, Missouri.  After falling behind on the note, she filed a Chapter 13 Bankruptcy Petition in this federal Judicial District in an effort to save her home.  Her rehabilitation plan called upon her for payment in full of all pre-bankruptcy default charges due on her loan, including late payments, inspection fees, late charges and attorney's fees owed and for May to maintain her post-bankruptcy filing monthly payments by tendering those payments directly to her mortgage servicer.  The first payments (both to the Trustee and the Mortgage Company) commenced in December 2007 and were scheduled to continue through November of 2012.

1

2.      At the conclusion of the bankruptcy case in November 2012, Nationstar filed a Response to the Chapter 13 Trustee's Notice of Final Cure Payment directed to Nationstar. Nationstar responded, confirming under oath that "the debtor has paid in full the amount required to cure the prepetition default to be paid through the Chapter 13 Plan," and that "debtor has paid all post-petition amounts due to be paid to the secured creditor as of the date of the Trustee's cure notice." May completed all of her obligations under the Plan including each of the sixty monthly payments to cure her pre-petition balance due along with each of the monthly mortgage payments due during the five-year length of the plan. As of December of 2012, she achieved the primary goal of her five year plan, being current on her mortgage.

3.      On February 26, 2013, however, May received a statement from Nationstar demanding $2,127.02 for "Lender Paid Expenses," and providing no further explanation. May thereafter requested but received no explanation.  May had fully and timely paid each of the three monthly installments since Nationstar acknowledged to the Bankruptcy Court that she was current on the note. She continued making her regular payment  in a timely manner during the months of March, April, May, June, July and August of 2013, while Nationstar continued showing  her account further and further in default.  Even though she remained current on her mortgage,   Nationstar's April 18, 2013 statement claimed she owed $4,296.00 in Past Due Payments in addition to the Lender Paid Expenses.  May continued to make her monthly payments and to demand answers from Nationstar regarding how it was determining that she was in default. Nationstar responded by making trial modification offers and demanding payment of the allegedly due amounts. In August 30, 2013, May received a notice from Nationstar declaring her in default on her mortgage and accelerating the note.  Nationstar returned the monthly payments which May tendered in months of September, October, November and December of

2013 and January and February of 2014 and retained the law firm of Martin, Leigh, Laws & Fritzlen, P.C. to act as the Trustee to foreclose on May's home. The Non-Judicial Foreclosure Sale was scheduled for February 24, 2014. On February 19, 2014, May filed her Original Petition and motions for a temporary restraining order and temporary injunction to stop this improper and illegal foreclosure. This Court set May's motions for hearing on Friday, February 21, 2014. Despite refusing to cease the sale following receipt of counsel's correspondence, upon receipt of notice of the hearing, counsel for Nationstar agreed to strike the sale for February 24th but refused to withdraw the notice of default. This action is being maintained to prevent any unlawful sale from being rescheduled and to seek damages from Nationstar for its wrongful conduct, for violations of the Real Estate Settlement Procedures Act, the Missouri Merchandising Practices Act, and the Fair Debt Collection Practices Act, for Wrongful Foreclosure, Invasion of Privacy, Slander of Title and breach of contract.

## PARTIES, JURISDICTION, AND VENUE

4.      Plaintiff, Jeannie K. May, is an individual residing at 9435 Romaine, Overland, Missouri 63114 in the County of St. Louis, State of Missouri.

5.      Defendant Nationstar Mortgage, LLC is a corporation organized pursuant to the laws of the State of Delaware, whose principal place of business is located in the State of Texas and was at all times relevant doing business in the County of St. Louis, State of Missouri. Its Registered Agent in the State of Missouri is CSC Lawyers Incorporating Service Company, 221 Bolivar Street, Jefferson City, Missouri 65101.

3

## VENUE & JURSIDICTION

6.      The Court has personal jurisdiction over this matter pursuant to Revised Statutes of Missouri (hereinafter "RSMo") §§ 478.220 and 478.070, and subject matter jurisdiction pursuant to §§ 506.500 and 351.582 RSMo.

7.      Venue and personal jurisdiction in this District are proper because Defendant's improper communication and actions were received by May within the County of St. Louis and Defendant transacts business here.  Venue is also proper pursuant to §§ 508.010(6) and 407.025 RSMo.

## FACTS COMMON TO ALL CLAIMS

8.      May purchased her home located at 9435 Romaine, Overland, Missouri on May 1, 2007.  Her financing was provided by Cornerstone Mortgage, Inc.

9.      The loan amount at the time of closing was $100,000.00.

10.      After closing on the new mortgage, its servicing was transferred to CitiMortgage, predecessor to Defendant Nationstar.

11.      Upon information and belief, said transfer was subject to a contract frequently known as a pooling and servicing agreement ("PSA").

12.      Upon information and belief, the PSA establishes the duties and responsibilities of Nationstar in servicing May's note and mortgage.

13.      May is an intended third-party beneficiary of the PSA which establishes Nationstar's duties and responsibilities in accepting, applying, and accounting for May's monthly payments in exchange for Nationstar keeping a portion of her monthly payment as consideration for performing these duties.

14.    May began to experiencing financial difficulties in 2007, and fell behind on her required mortgage payments.

15.    In an effort to save her home and to rehabilitate her financial situation, May filed a Voluntary Petition for Relief pursuant to Chapter 13 of the United States Bankruptcy Code. The case was filed on November 6, 2007 in the United States Bankruptcy Court for the Eastern District of Missouri. See Exhibit A-Notice of Commencement of Chapter 13 Case).

16.    May's Proposed Chapter 13 Plan called for repayment of all pre-bankruptcy default charges on the mortgage to CitiMortgage over the first 36 months of the 60 month plan by the Chapter 13 Trustee and for May to maintain the monthly payments which came due on the mortgage by making direct payments to CitiMortgage. See Exhibit B-Chapter 13 Plan.

17.    May's Chapter 13 Plan was confirmed by Order of the Honorable Barry S. Schermer of the United States Bankruptcy Court, Eastern District of Missouri on January 17, 2008. See Exhibit C-Order Confirming Chapter 13 Plan.

18.    The Chapter 13 process allows creditors to file claims due for payment in the bankruptcy. CitiMortgage, predecessor to Defendant Nationstar, filed a proof of claim in May's Chapter 13 case.  It sought reimbursement of pre-petition default charges, including missed payments, late charges, penalties and fees in the amount of One Thousand Seven Hundred None Dollars and Seventy Cents ($1,709.70). See Exhibit D-CitiMortgage Proof of Claim.

19.    May continued to participate in the Chapter 13 process by making the required payments to the Chapter 13 Trustee and to CitiMortgage.  In November of 2010, May received correspondence from Defendant Nationstar and its predecessor, CitiMortgage, indicating that the servicing of her mortgage had been transferred from CitiMortgage to Defendant Nationstar.  See Exhibit E-Correspondence from Nationstar and CitiMortgage directed to May.  A Notice of

5

Transfer of Claim was also filed in May's Chapter 13 Bankruptcy.  See Exhibit F-Notice of Transfer of Claim.

20.     On April 18, 2011, Nationstar filed a Motion for Relief in May's Chapter 13 case alleging that she was 5 payments delinquent in her post-bankruptcy mortgage obligation and that she also owed for inspection fees and attorney's fees.  The motion sought relief from the provision of the bankruptcy stay unless May tendered the requested amount, which was Four Thousand Eight Hundred Thirty Eight Dollars and Thirty Eight Cents ($4,838.38).  See Exhibit G-Nationstar Motion for Relief.

21.     May tendered a cashier's check issued by US Bank and dated May 6, 2011 in the amount of $4,838.38 in response to Nationstar's Motion for Relief.  This check was received by Nationstar on May 11, 2011, and was successfully negotiated by Nationstar.  See Exhibit H-May's Cashier's Check in the amount of $4,838.38 made payable to Nationstar including confirmation that the check was paid by US Bank.

22.     On May 18, 2011, Nationstar withdrew its Motion for Relief in May's Chapter 13 Bankruptcy case. See Exhibit I-Nationstar's Withdrawal of Motion for Relief.

23.     Bankruptcy Rule of Civil Procedure 3002.1(c) requires the holder of a claim secured by a security interest in the debtor's principal residence to file and serve on the debtor, debtor's counsel and the trustee a notice itemizing all fees, expenses or charges incurred in connection with the claim after the bankruptcy case was filed and recoverable against the debtor or debtor's principal residence within 180 days after they are incurred.  Other than the previously mentioned Motion for Relief, which was subsequently withdrawn by Nationstar after payment of the demanded funds, Defendant Nationstar filed no such notice of demand for payment of additional fees during the course of May's bankruptcy.

24.     When May reached the sixtieth month of her 60 month bankruptcy plan, the Chapter 13 Trustee filed a Notice of Right to Cure directed to Defendant Nationstar pursuant to Bankruptcy Rule of Civil Procedure 3002.1(f).  The Notice asserted that the Trustee had paid the full amount of the pre-petition default claim asserted by Nationstar and its predecessor, CitiMortgage, in the case.  It also asserted that all post-bankruptcy filing monthly payments had been made directly by May.  Pursuant to the Bankruptcy Rules of Civil Procedure, Nationstar had 21 days in which to file a response.  Said response is to be considered a supplement to the original Proof of Claim filed in the case, which is a document filed under oath.  The Notice was filed on November 15, 2012. See Exhibit J-Trustee Notice of Right to Cure.

25.     Nationstar filed its Response to the Trustee's Notice of Right to Cure on November 29, 2012.  In its response, Nationstar admitted that May had paid the amount required to cure the prepetition default to be paid through the Chapter 13 Plan in full in her bankruptcy case, and that May had also paid all post-petition amounts due to Defendant Nationstar as of the date of the Trustee's cure notice.  See Exhibit K-Nationstar's Response to Trustee's Notice of Right to Cure.

26.     May was relieved and gratified to have completed the Chapter 13 and to achieve current status on her mortgage. She felt elated once again to be in control of her financial destiny and to have regained her stability after the difficulties she experienced.  .

27.     May made timely payments to Defendant Nationstar in months of December 2012, January 2013 and February 2013.  See Exhibit L-proof of payments made in 12/2012, 1/2013 and 2/2013.

28.     During the course of her 60 month Chapter 13 case, and in the 3 months that followed, May did not receive monthly billing statements from defendant.  She was advised that

Nationstar had a policy of not sending statements during the course of a Chapter 13 Bankruptcy, so when she was more than 30 days removed from receiving her bankruptcy discharge, she contacted representatives of Defendant to request that it resume sending her monthly statements on her mortgage account.  During the course of her conversation with the Nationstar customer service representative, May inquired about whether she was current on her account, and received confirmation that she was current.

29.     May received a monthly statement dated February 26, 2013 pertaining to her obligation on the mortgage for the month of March 2013.  This statement alleged that May owed Nationstar $2,097.20 in addition to her monthly payment of $859.38.  The statement alleged that May owed for unpaid late charges, and lender paid expenses which included legal fees and property inspections.  See Exhibit M-Nationstar monthly mortgage statement dated 2-26-2013.

30.     May was shocked and upset when she received this statement, given the fact that she had received confirmation that she was current on her mortgage from Nationstar at the end of her bankruptcy case in November 2012 and again via a phone conversation late in February of 2013, and she had made all of the required payments since receiving the November 2012 confirmation from Nationstar.  She contacted Nationstar's customer service department and attempted to explain that Nationstar was mistaken with respect to this alleged delinquency, but had no success.

31.     May received correspondence dated February 28, 2013 from Nationstar which was labelled as a "Suspense Notice," and which asserted that unapplied funds had been placed in the suspense account which is used for situations wherein "funds are insufficient to be applied as a full payment."  See Exhibit N-Nationstar Suspense Notice dated 2-28-2013.  May had not

received any Suspense Notices in the months of November 2012, December 2012 or January 2013.

32.     May began to receive collection calls from representatives of Nationstar regarding her "delinquency," and on each occasion, May attempted to explain that she was current on her mortgage and owed no delinquency.

33.     On March 6, 2013, Nationstar called May at work to determine when she would be paying an alleged arrearage. Nationstar claimed in this call that she was five months behind and had not made a payment since September 2012. This call was extremely upsetting to May as she had just spent five years in a bankruptcy plan making up the arrearage and bringing her loan current. This call was further upsetting and embarrassing because her manager and her coworkers could hear her responses including her explanation that she was not behind and had made every payment necessary to both the trustee and to Nationstar.

34.     On March 8, 2013, May electronically tendered her regular monthly payment in the amount of $859.38. See Exhibit O-payment confirmation from 3-8-2013.

35.     May received an Escrow Disclosure Statement analysis from Nationstar dated March 8, 2013 indicating that May had an escrow shortage and deficiency of $923.41 and advising her that her monthly payment would increase from $859.38 to $999.45 beginning on May 1, 2013 in order to cover the alleged shortage. May was skeptical about the change, given the fact that her payment had only increased for escrow changes in years past by $5 to $10 per month, and there was no appreciable change in her home owner's insurance expense or her real estate taxes. See Exhibit P-Escrow Disclosure Statement 3-8-2013.

36.     May received a monthly statement from Nationstar dated March 11, 2013 indicating that she still owed a balance of $2,097.20 for "Lender Paid Expenses," in addition to her regular monthly payment.  See Exhibit Q-Nationstar Monthly Statement dated 3-11-2013.

37.     May received a second "Suspense Notice" letter from Nationstar dated March 29, 2013.  See Exhibit R-Nationstar Suspense Notice dated 3.29.2013.

38.     May received a third "Suspense Notice" letter from Nationstar dated April 1, 2013.  See Exhibit S-Nationstar Suspense Notice dated 4.1.2013.

39.     On April 8, 2013, May electronically tendered her regular monthly payment in the amount of $859.38.  See Exhibit T-payment confirmation from 4-8-2013.

40.     On April 8, 2013, May was again called by Nationstar at work.  This call was an additional attempt to collect a late fee on her account despite having paid all necessary payments in a timely manner.  This call was again upsetting and embarrassing because of the efforts to bring her note current through the bankruptcy plan and the ability of her coworkers and manager to hear her trying to explain that she was not behind on her mortgage. May asked Nationstar to not contact her again regarding their mistake.

41.     May continued to contact representatives of Nationstar in an effort to rectify the situation and convince it that she was current on her mortgage obligations.  She sent faxes to Nationstar on three separate occasions in April of 2013 which explained her position and provided support documentation.  The first was sent on April 9, 2013.  See Exhibit U.  The second was sent on April 15, 2013. See Exhibit V.  The third was sent on April 23, 2013. See Exhibit W.

42.     Nationstar called again on April 10, April 17, and April 20, 2013 continuing to demand payments despite her being current on her note and despite her calls in contacts with

10

Nationstar on April 8 and April 12 where she again explained the situation to an employee named Valicia and provided documentation via facsimile. In the April 20 phone call, in addition to demanding payment, Nationstar denied knowing an employee named Valicia and instructed May to send her documents via fax to "research." These calls were again upsetting and embarrassing as they continued to threaten her home after a five-year effort to bring her loan current.

43.     May received a monthly statement from Nationstar dated April 18, 2013. The statement noted that May's required monthly payment had increased to $999.45. It still showed that May owed $2,097.20 for "Lender Paid Expenses," and also added a new delinquency line for "Past Due Payments" in the amount of $4,296.90 and "Unpaid Late Charges" of $919.80. See Exhibit X-monthly statement dated 4-18-2013.

44.     May received correspondence dated April 19, 2013 from Nationstar notifying May that Nationstar was declaring her to be in default under the terms and condition of her note and deed of trust. See Exhibit Y-Nationstar default letter 4-19-2013.

45.     On April 23, 2013, Nationstar again called to inquire whether she had faxed the documents despite having already been sent an email stating that she had. In this call, Nationstar indicated that she should get a response to her fax in writing within 10 days.

46.     On April 25, 2013, despite having received her fax and promised a response, Nationstar again called at work to demand payment on the arrears. This call was again upsetting and embarrassing as it continued to threaten her home and these calls could be overheard by her manager in coworkers. May again told Nationstar not to contact her on her work phone and directed them to call her cell phone after 4:00 PM when she was at home.

47.     On April 30, 2013, Nationstar called her again this time alleging and arguing with her on whether she ever sent documents to research and claiming an inability to directly contact research to confirm receipt. Nationstar again stated that research would provide a written response and to be patient. This call coupled with the April 19 notice of default and threats of foreclosure was extremely upsetting because there was no indication that Nationstar was going to delay its foreclosure process while investigating or responding to her facsimiles. She was in real fear that despite complying with and completing the bankruptcy plan, making all payments subsequent to the bankruptcy plan, and providing documentation that she had done so, Nationstar was still going to take her home.

48.     Collection calls continued both to her cell phone and work phone until at least the end of October 2013. On May 7, 2013, May electronically tendered her regular monthly payment in the amount of $999.45 to Nationstar. See Exhibit Z-payment confirmation from 5-7-2013.

49.     May received a letter from Nationstar dated May 8, 2013 which offered her a Trial Modification Plan for her mortgage. May did not accept the offer. See Exhibit AA-Nationstar Modification Proposal Dated May 8, 2013.

50.     May received another "Suspense Notice" letter from Nationstar dated May 9, 2013. See Exhibit BB-Nationstar Suspense Notice.

51.     May received a letter from Nationstar dated June 4, 2013 which made another Trial Modification Proposal for her mortgage. May did not accept the proposal. See Exhibit CC-Nationstar Modification Proposal Dated June 4, 2013.

52.     On June 14, 2013, May electronically tendered her regular monthly payment in the amount of $999.45 to Nationstar. See Exhibit DD-payment confirmation from 6-14-2013.

53.     May received another "Suspense Notice" letter from Nationstar dated June 18, 2013.  See Exhibit EE-Nationstar Suspense Notice.

54.     On July 12, 2013, May electronically tendered her regular monthly payment in the amount of $999.45 to Nationstar.  See Exhibit FF-payment confirmation from 7-12-2013.

55.     May received another "Suspense Notice" letter from Nationstar dated July 16, 2013.  See Exhibit GG-Nationstar Suspense Notice.

56.     On August 13, 2013, May electronically tendered her regular monthly payment in the amount of $999.45 to Nationstar.  See Exhibit HH-May's on line pay history with US Bank.

57.     On August 21, 2013, May sent correspondence to Nationstar which was identified as a Qualified Written Request pursuant to the Real Estate Settlement Procedures Act.  The letter requested that Nationstar explain how her account went from being current in November of 2012 as confirmed by the declaration in the Bankruptcy case to being over $6,000.00 in arrears 10 months later, even though she had made every monthly payment which came due in the interim.  See Exhibit II-Qualified Written Request dated 8-21.2013.

58.     May received correspondence dated August 30, 2013 from Nationstar notifying May that Nationstar was declaring her to be in default under the terms and condition of her note and deed of trust, and giving her until October 4, 2013 in which to tender $6,013.28 in order to bring the account out of default.  See Exhibit JJ Nationstar default letter 8-30-2013.

59.     May received a letter dated September 3, 2013 from Nationstar Customer Relations Specialist, Marlene Amaya, which purported to be a response to her Qualified Written Request sent by May to Nationstar dated August 21, 2013.  The letter included the following enclosures: the Note, Deed of Trust and an alleged payment history.  See Exhibit KK-Nationstar Response to QWR.

60.     May continued to tender her regular monthly payment in the amount of $999.45 in September, October and November 2013, but those payments were rejected by defendant Nationstar and returned to May.

61.     May received a letter dated November 5, 2013 from a law firm known as Martin, Leigh, Laws & Fritzlen, P.C advising her that it had been retained by Nationstar Mortgage, LLC to act as Trustee to foreclose on her home.  See Exhibit LL-letter from Martin, Leigh, Laws & Fritzlen dated 11-5-2013.

62.     On December 19, 2013, May's attorney, Robert T. Healey, sent a letter to Martin, Leigh, Laws, & Fritzlen, P.C. (hereinafter "MLL&F) attorneys for Nationstar, disputing that May was in default on her loan and asserting that neither Nationstar nor MLL&F had a legal right to proceed with foreclosure.  See Exhibit MM-correspondence directed to MLL&F dated 12-19-2013.

63.     MLL&F sent a response to May's attorney's dispute letter dated December 30, 2013.  The correspondence included a copy of the Note and Deed of Trust on the property and another pay history for the account.  See Exhibit NN-MLL&F correspondence dated 12-30-2013.

64.     On January 14, 2014, May's attorney, Robert T. Healey, sent a follow up letter to MLL&F, advising that its letter dated December 30, 2013 did not address any of the issues raised in May's dispute nor did it explain how Nationstar was legally entitled to undertake a foreclosure under the circumstances.  See Exhibit OO-correspondence dated 1-14-2014 directed to MLL&F.

65.     May continued to tender her regular monthly payment in the amount of $999.45 to Nationstar during the months of December 2013, January 2014 and February 2014.

66.     MLL&F and Nationstar responded by forwarding a Notice of Foreclosure dated January 21, 2014 which scheduled a foreclosure sale of May's property on February 24, 2014. See Exhibit PP-Notice of Trustee's Sale.

**COUNT I**
**VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT**
**("RESPA"), 12 USC § 1605**

67.     In this Count, May hereby re-alleges and incorporates by reference each of the other allegations contained in this Petition as if fully set forth herein.

68.     In a fax dated April 9, 2013, and, according to the transmission report, received by Nationstar the same day, May questioned the default status of her account, the amountNationstar is currently collecting, and questioned the placement of any funds in a suspense account. This fax identified both her name and account number. May enclosed documents that show the status of her account at the completion of her bankruptcy plan and proof of all payments made subsequent to Nationstar's acknowledgment in the bankruptcy that all payments had been received. This facsimile contained the necessary components to be considered a qualified written request ("QWR") pursuant to RESPA.

69.     Nationstar failed to acknowledge receipt of the QWR within five business days as required by RESPA.

70.     Nationstar failed to investigate her concern and failed to provide a written notice either that her account was being corrected or a written notice of the reasons Nationstar believed the account was correct as required by RESPA.

71.     In a fax dated April 23, 2013 and at Nationstar's instruction, May again provided her name, account number, and questioned her account status as severely past due. In this fax, May provided all of the documentation she had previously sent as well as copies of her previous

15

faxes. This facsimile also contained the necessary components to be a QWR pursuant to RESPA.

72. Nationstar failed to acknowledge receipt of the QWR within five business days as required by RESPA.

73.    Nationstar failed to investigate her concern and failed to provide a written notice either that her account was being corrected or a written notice of the reasons Nationstar believed the account was correct as required by RESPA.

74.    In a certified letter dated August 21, 2013, May provided her name, address, full Social Security number and loan number.  This letter disputed amounts claimed as owed, the application of funds and the addition of improper fees and costs charged to the account.  It explained all of the facts previously provided regarding the bankruptcy, completion of the bankruptcy plan, and proof of her post bankruptcy payments.  It specifically asked for explanations regarding the past due balance and an explanation of her increased monthly payment. This letter contained the necessary components to qualify as a QWR under RESPA.

75.    Nationstar failed to acknowledge receipt of the QWR within five business days as required by RESPA.

76.    Nationstar failed to investigate her concern and failed to provide a written notice either that her account was being corrected or a written notice of the reasons Nationstar believed the account was correct as required by RESPA.  Instead it treated her QWR as an FDCPA request for debt verification and provided her with copies of some documents, such as the note and deed of trust, that she had attached to the original letter.

77.    As a direct and proximate result of Defendant's actions, May has suffered economic and emotional damages, including but not limited to loss of real and personal property,

the loss of equity in his property, a damaged credit rating, and stress, embarrassment and humiliation.

**WHEREFORE**, May prays for judgment against the Defendant for actual, compensatory, statutory damages, and attorney's fees, in an amount to exceed Twenty Five Thousand Dollars ($25,000.00), and for such other and further relief as the Court deems just and proper in the circumstances.

**COUNT II**
**VIOLATION OF THE MISSOURI MERCHANDISING**
**PRACTICES ACT**

78.     In this Count, May hereby re-alleges and incorporates by reference each of the other allegations contained in this Petition as if fully set forth herein.

79.     Defendant Nationstar was acting as a servicer from November 1, 2010 to the present.

80.     Defendant Nationstar was charged with collecting payments, calculating interest, providing customer support to May, and was the party with the capacity to arrange a modification of the loan in connection with the original sale of the property.

81.     Defendant Nationstar falls within the purview of RSMo § 407.010, as its actions herein qualify as "services" under the Missouri Merchandising Practices Act (hereinafter "MMPA").

82.     Defendant received payment for these services. The fees received by Nationstar constituted a portion of the monthly mortgage payment it received from May.

83.     Upon information and belief, Nationstar's duties, obligations, and compensation for providing services related to the note and mortgage are set forth in the PSA.

84.     May is an intended third-party beneficiary of the PSA.

85.     In addition, the note that Nationstar is acting under states "the lender may transfer this note. The lender or anyone who takes this note by transfer and who is entitled to receive payments under this note is called the 'Note Holder.'" Upon information and belief, Nationstar has been transferred the note or is the agent of the party who was transferred the note by the lender and is a party to the note as successor in interest to the lender.

86.     The Deed of Trust securing the Note states "If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, **the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer** and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser." (emphasis added).

87.     Nationstar is a party to this contract with servicing obligations created by this contract that have been transferred to it and stands in the shoes of previous servicers and/or the lender.

88.     Defendant Nationstar engaged in unfair, deceptive, and misleading practices in connection with the servicing of the mortgage on May's home in violation of the MMPA (RSMo.§ 407.010 RSMo. et seq.) by its actions as described in the preceding paragraphs. These actions include but are not limited to the following:

      a.   Refusing to abide by its own admission filed under oath at the close of May's bankruptcy case in November of 2012 and treat May's account as current beginning in February of 2013 and continuing to the present time;

      b.   Declaring expenses which had already been paid as not paid and treating them as delinquencies for the purpose of declaring that the account was in default when it was not in default;

18

c. Attempting to collect expenses which were allegedly incurred during the course of May's Chapter 13 Bankruptcy which were never disclosed in the Bankruptcy as required by the Bankruptcy Rules and which were not sanctioned by the bankruptcy court for the purpose of declaring that the account was in default when it was not in default; and

d. Wrongfully foreclosing on May's home.

89.    As a direct and proximate result of these unfair, deceptive and misleading acts, May has suffered damages in excess of twenty-five thousand dollars.

90.    As a direct and proximate result of Defendant's actions, May has suffered economic and emotional damages, including but not limited to loss of real and personal property, the loss of equity in his property, a damaged credit rating, and stress, embarrassment and humiliation.

**WHEREFORE**, May prays for judgment against the Defendants for actual, compensatory, punitive damages, and attorney's fees, in an amount to exceed Twenty Five Thousand Dollars ($25,000.00), and for such other and further relief as the Court deems just and proper in the circumstances.

## COUNT III
## VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT
## ("FDCPA"), 15 USC §§ 1692 *ET SEQ*

91.    In this Count, May hereby re-alleges and incorporates by reference each of the other allegations contained in this Petition as if fully set forth herein.

92.    May is a natural person allegedly obligated to pay a debt making her consumer pursuant to 15 USC § 1692a(3).

93.     The note and deed of trust are an obligation of this consumer to pay for property is primarily for personal and family purposes making it a debt pursuant to 15 USC § 1692a(5).

94.     Nationstar regularly collects or attempts to collect debts due another and uses the mails in a business principal purpose of which is the collection of any debts making Nationstar a debt collector as defined by15 USC § 1692a(6).  Because Nationstar became the loan servicer effective November 1, 2010, roughly 3 years after default and the subsequent bankruptcy, Nationstar is not subject to the exemptions from the application of the FDCPA as the debt was in default at the time it was obtained by Nationstar.

95.     Nationstar has misrepresented the legal status of this debt, has threatened to take action that cannot legally be taken, used false representations to collect the debt, and has attempted to collect amounts not expressly authorized by the agreement or permitted by law in violation of 15 USC §§ 1692e and 1692f.

96.     The faxes discussed herein disputed a portion of the alleged debt.  Nationstar failed to provide verification of this debt in response to these faxes but continued to make collection calls and send collection letters in violation of 15 USC § 1692g.

97.     As a direct and proximate result of Defendant's actions, May has suffered economic and emotional damages, including but not limited to loss of real and personal property, the loss of equity in her property, a damaged credit rating, and stress, embarrassment and humiliation.

**WHEREFORE**, May prays for judgment against the Defendant for actual, compensatory, statutory damages, and attorney's fees, in an amount to exceed Twenty Five Thousand Dollars ($25,000.00), and for such other and further relief as the Court deems just and proper in the circumstances.

## COUNT IV
## SLANDER OF TITLE

98.     In this Count, May hereby re-alleges and incorporates by reference each of the other allegations contained in this Petition as if fully set forth herein.

99.     May's previous default was cured by the completion of the bankruptcy plan.

100.    May made or tendered all payments required since the completion of the bankruptcy plan to Nationstar and has not violated the terms of the note and is not in default.

101.    May repeatedly notified Nationstar by telephone, facsimile, her letter, and her attorneys communications that she was not in default and has provided documentation showing completion of bankruptcy plan, Nationstar's admission that all past due amounts were paid, that all amounts due as of the completion of the plan have been paid, and that all payments required since completion of the plan had been paid.

102.    Nationstar knew that May was not in default but has proceeded with non-judicial foreclosure despite this knowledge and published notice of trustee sale based on default in the St. Louis Countian while knowing there was no default.

103.    This knowing and willful publishing of false information regarding default on her deed of trust is malicious.

104.    May has incurred pecuniary damages including attorney's fees in her efforts to correct the slander to her title.

**WHEREFORE,** May prays for judgment against the Defendant for actual, compensatory, punitive damages, in an amount to exceed Twenty Five Thousand Dollars ($25,000.00), injunctive relief and/or a restraining order preventing the sale of her property and for such other and further relief as the Court deems just and proper in the circumstances.

21

## COUNT V
## INVASION OF PRIVACY

105.    In this Count, May hereby re-alleges and incorporates by reference each of the other allegations contained in this Petition as if fully set forth herein.

106.    Between March 6, 2013 and October 24, 2013, Nationstar called May at her place of employment multiple times to demand payment of amounts not owed. These calls were particularly embarrassing because her manager and coworkers could hear her part of each of these conversations.   These calls to her place of employment continued despite repeated instruction not to call her work and Direction to contact her attorney.

107.    In addition, during this period Nationstar called her cell phone multiple times to demand payment of amounts not owed.

108.    In addition, during this period Nationstar repeatedly called her cell phone interrupting her day long enough for her to determine who was calling and to refuse to take the call.

109.    As outlined above, during this period Nationstar repeatedly sent collection letters and notices of funds being placed in suspense and many demands for amounts not owed.

110.    These calls and letters made repeated demands to pay amounts not owed, threatened foreclosure, and made it clear that they were not investigating her claims and documentation demonstrating that the note was current.  Many of these calls were embarrassing as coworkers and her manager could hear what was going on. In addition, these continuing threats to her home, especially in light of the five-year effort to bring her note current, caused a great deal of fear and anxiety because of the threats to her home.

111.    As a direct and proximate result of Defendant's actions, May has suffered economic and emotional damages, including but not limited to loss of real and personal property,

22

the loss of equity in her property, a damaged credit rating, and stress, embarrassment and humiliation.

**WHEREFORE**, May prays for judgment against the Defendant for actual, compensatory, and punitive damages, in an amount to exceed Twenty Five Thousand Dollars ($25,000.00), and for such other and further relief as the Court deems just and proper in the circumstances.

**COUNT VI**
**WRONGFUL FORECLOSURE**

112.    In this Count, May hereby re-alleges and incorporates by reference each of the other allegations contained in this Petition as if fully set forth herein.

113.    May made her monthly payments to Defendant Nationstar in conformance with the Note and Deed of Trust

114.    May was not in default at the time Nationstar initiated foreclosure.

115.    Defendant Nationstar is attempting to foreclose on May's home wrongfully and without any just or legal cause.

116.    As a direct and proximate result of Defendant's actions, May has suffered economic and emotional damages, including but not limited to loss of real and personal property, the loss of equity in her property, a damaged credit rating, and stress, embarrassment and humiliation.

**WHEREFORE**, May prays for judgment against the Defendant for actual, compensatory, punitive damages, and attorney's fees, in an amount to exceed Twenty Five Thousand Dollars ($25,000.00), injunctive relief and/or a restraining order preventing the sale of her property and for such other and further relief as the Court deems just and proper in the circumstances.

23

## COUNT VII
## BREACH OF CONTRACT

117.   In this Count, May hereby re-alleges and incorporates by reference each of the other allegations contained in this Petition as if fully set forth herein.

118.   The note provides that "Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'"

119.   The note also provides that the borrower "will pay principal and interest by making a payment every month. [and further that]. . .[e]ach monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. . . . [and that borrower] will make my monthly payments at . . . or at a different place if required by the Note Holder."

120.   The November 1, 2010 transfer of servicing is a notification that the "note holder" requires payments be made to a different place.

121.   The Note further provides "If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder.  The amount of the charge will be 5.00% of my overdue payment of principal and interest.  I will pay this late charge promptly but only once on each late payment."

122.   The Deed of Trust securing the Note states "all payments accepted and applied by Lender shall be applied in the following order of priority:  (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under section 3.  Such payments shall be applied to each Periodic Payment in the order in which it became due.  Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note."

123.   The Deed of Trust further states "If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the

24

payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due."

124. As alleged herein, May was current on her note as of the completion of the bankruptcy plan and Nationstar has admitted that May was current on her note at this time.

125. May made each every payment since the completion of the bankruptcy plan in a timely manner and prior to the conclusion of the 15 day grace period outlined in the note.

126. Upon information and belief, Nationstar failed to apply these payments to interest, principal and other charges in the order required under the Note and Deed of Trust.

127. Upon information and belief, Nationstar assessed late fees and other charges not permitted by the terms of the Note and Deed of Trust and, in breach of the express provisions described above, applied her payments to fees and charges rather than to her interest, principal and escrow account.

128. This misapplication of funds and charging of late fees and other charges not permitted under the Note were a breach of the Note and Deed of Trust.

129. May was harmed by this breach which resulted in collection calls, letters and a notice of foreclosure that has caused considerable stress, anxiety and emotional distress which are damages naturally and proximately caused by Nationstar's breach of the Note and Deed of Trust. It is reasonably contemplated and foreseeable that a mortgage loan servicer's efforts to collect a debt that is not owed, including false threats of foreclosure, because of its own failure to properly apply payments will result in significant distress and upset to the borrower.

130.    As a direct and proximate result of Defendant's actions, May has suffered actual and consequential damages including economic and emotional damages loss of real and personal property, the loss of equity in her property, a damaged credit rating, and stress, embarrassment and humiliation.

**WHEREFORE**, May prays for judgment against the Defendant for actual, compensatory, punitive damages, and attorney's fees, in an amount to exceed Twenty Five Thousand Dollars ($25,000.00), injunctive relief and/or a restraining order preventing the sale of her property and for such other and further relief as the Court deems just and proper in the circumstances.

### **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Jeannie K. May prays this Court enter judgment in her favor, and that this Court award her:

(a)    Actual damages, in an amount to be determined by the Court;

(b)    Statutory damages pursuant to 12 U.S.C. § 2605f;

(c)    Punitive damages in an amount that is fair and reasonable;

(d)    Reasonable attorney's fees;

(e)    The costs of this action;

(f)    Injunctive relief restraining Defendant from proceeding to a foreclosure sale of May's Home;

(g)    A temporary restraining order preventing Defendant from proceeding with the foreclosure sale currently set for February 24, 2014; and

(h)    Such other and further relief as the Court deems just and equitable under the circumstances.

26

HEALEY LAW, LLC

ROBERT T. HEALEY          MOBAR No. 34138
640 Cepi Drive, Suite A
Chesterfield, MO 63005
bob@healeylawllc.com
(636) 536-5175 (telephone)
(636) 590-2882 (facsimile)
Co-counsel for Plaintiff

27