IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| 1. JEANNIE K. MAY, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No.: 4:14-CV-578-TCM |
| ) | |
| 1. NATIONSTAR MORTGAGE, LLC. ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

COMES NOW the Plaintiff, Jeannie K. May, and hereby objects to Defendant's Motion to Dismiss Counts II, IV, V, and VI. In support of said objection, Plaintiff states the following:

**INTRODUCTION**

When Plaintiff, Jeannie K May, experienced financial difficulties in 2007 she availed herself of her rights under the United States bankruptcy code and filed a Chapter 13 Bankruptcy Petition in this Federal Judicial District in an effort to save her home. For five years, Ms. May diligently complied with the requirements of her bankruptcy plan and paid all of the monthly installments necessary to pay all past due principal, interest, and pre-bankruptcy default charges identified by the bank as due and owing as well as paying principal and interest for each of the post-bankruptcy filing installment payments as they came due. As of the December, 2012 the completion of her bankruptcy plan and her discharge from bankruptcy, Nationstar had not identified any additional fees, charges, principal or interest that needed to be paid. Her loan was brought current by her successful completion of this bankruptcy plan.

Despite making all post discharge payments due, in February of 2013, Nationstar began demanding payments by mail and phone calls of additional amounts for alleged past due

1

amounts. Nationstar next began placing her timely and full monthly payments in a suspense account as insufficient to pay the new outstanding balance. Ms. May continued to make her monthly payments until Nationstar rejected her September 2013 payment. She thereafter tendered each monthly payment only to have it returned sometime later.

On multiple occasions, May requested but received no explanation regarding these additional charges, and on multiple occasions, May provided documentation from the bankruptcy case and proof of her continued post-bankruptcy payments evidencing that her loan was current. This information was provided both to Nationstar and to the Trustee.

Rather than perform an investigation into Ms. May's evidence that the note was current, Nationstar engaged in a systematic collection campaign with threats of foreclosure to extract payment of amounts not owed. These efforts culminated with the publishing of the notice of sale in a non-judicial foreclosure.

Nationstar engaged in this activity despite notice and evidence from Ms. May and from her counsel that the loan was current.

## ARGUMENT AND AUTHORITIES

**I.     Standard of Review**

The purpose of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is to test the legal sufficiency of the complaint. The factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ( citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002)); *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (a

well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his claim. *Id*. A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp*., 550 U.S. at 570. See also *Id*. at 563 ("no set of facts" language in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957), "has earned its retirement.") "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555.

## II. Plaintiff Has Stated a Claim for Violation of the Missouri Merchandising Practices Act (Count II)

Defendant argues that Plaintiff's claim for violation of the Missouri Merchandising Practices Act ("MMPA") fails as a matter of law because the alleged acts of deception or unfair practices were not committed in connection with the sale or advertising of merchandise. Memorandum in Support, Docket #19 at p. 4. This argument fails to take into consideration the history and purpose of the MMPA, including the 1985 Amendment adding language broadening its reach to acts committed "before, during or after the sale," and the inclusion of credit and services under the Act. This argument also fails to take into consideration precedents in the state of Missouri that indicate the Eastern District of Missouri was overly restrictive in its interpretation of the term "in connection with," does not take into consideration that the violation was in connection with a service, nor does it take into consideration the current unsettled state of Missouri law on this very topic.

A. History and Purpose of the MMPA.

In the MMPA, the Missouri General Assembly recognized the breadth of potential marketplace misconduct, and accordingly declared "unlawful" "*any* deception, fraud, false

3

pretense, false promise, misrepresentation, *unfair practice* or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce… whether committed *before, during or after* the sale, advertisement or solicitation." Mo. Rev. Stat. § 407.020.1 (emphasis added). The language "whether committed before, during or after the sale" was added to the statute in 1985 to broaden its reach and the statutory text is not cited nor explained by the Defendant here. "Sale," is defined as "*any* sale, lease, offer for sale or lease, or attempt to sell or lease merchandise for cash *or on credit*." Mo. Rev. Stat § 407.010(6) (emphasis added). The MMPA thus, by its terms, expressly applies to "credit" transactions. The term "merchandise" is defined as "any objects, . . . intangibles, real estate or *services*." Mo. Rev. Stat. § 407.010(5) (emphasis added). The legislative definition including "credit" and "services" makes clear that consumer financial services fall within the Act.

As the Supreme Court of Missouri has recognized, "The MMPA's fundamental purpose is the protection of consumers." *Huch v. Charter Communications, Inc.*, 290 S.W.3d 721, 724 (Mo. 2009). "The legislature intended [MMPA § 407.020] to 'supplement the definitions of common law fraud in an attempt to preserve fundamental honesty, fair play and right dealings in public transactions.'" *Id*. (quoting *State ex rel. Danforth v. Independence Dodge, Inc.,* 494 S.W.2d 362, 368 (Mo.App.1973)). Consumer protection statutes are remedial in nature and therefore traditionally are liberally construed.

B. <u>The MMPA and Mortgage Servicing</u>.

Nationstar asks the court to construe the MMPA narrowly, ignoring the "before during and after" text added by the legislature in 1985. Nationstar is basing its motion on the reasoning set forth by the Missouri Court of Appeals for the Eastern District of Missouri in *State ex rel. Koster v. Professional Debt Management*, 351 S.W.3d 668, 674 (Mo. Ct. App. 2011). In that

case, the Court upheld a dismissal of an MMPA claim where the plaintiff failed to allege that the deceptive practice was "in connection" with a consumer sales transaction. While this opinion dealt with the application of the MMPA to the actions of third party debt collectors, the case has also been cited for the proposition that the MMPA does not apply to mortgage servicing actions taking place after loan origination based on the fact that the servicing activity did not occur at the time of the initial sale of the property. See *Conway v. CitiMortgage, Inc.*, 2013 WL 6235864 (Mo. App. Dec. 3, 2013) and *Hess v. Wells Fargo Home Mortgage*, 2012 WL 872752 (E.D. Mo. Mar. 14, 2012). Plaintiff asserts that these opinions are not consistent with either the plain language of the Statute or with prior Missouri Supreme Court precedent interpreting the MMPA. § 407.020.1 RSMo (App. at A-10)

The MMPA is a broad, remedial statute that requires a liberal interpretation to give the maximum possible protection to Missouri consumer. The pertinent language of the MMPA states:

> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . is declared to be an unlawful practice . . . Any act, use or employment declared unlawful by this subsection violates this subsection whether committed before, during or after the sale, advertisement or solicitation.

The Missouri Supreme Court has consistently held that the MMPA was drafted to "preserve fundamental honesty, fair play and right dealings in public transactions." *Chochorowski v. Home Depot U.S.A.*, 404 S.W.3d 220, 226 (Mo. 2013), and stated that the MMPA covers every practice imaginable and every unfairness to whatever degree. *Ports Petroleum Co., Inc. of Ohio v. Nixon*, 37 S.W.3d 237, 240 (Mo. 2001). The legislature intentionally drafted the MMPA broadly to prevent evasion by "overly meticulous

definitions." *Zmudav. Chesterfield Valley Power Sports, Inc.*, 267 S.W.3d 712, 716 (Mo.App. E.D. 2008). The MMPA is not merely "remedial" but "paternalistic" legislation. *Electrical and Magneto Service Co. Inc. v. AMBAC Intern. Corp.*, 941 F.2d 660, 663 (8th Cir. 1991). Above all else, the purpose of the MMPA "is to protect consumers." *Huch v. Charter Commc'ns, Inc.,* 290 S.W.3d 721, 724 (Mo. banc 2009).

By including the phrase "in connection with" in the MMPA, the legislature undoubtedly intended to ensure the existence of a "link" between the unlawful act and the sale. However, equal interpretive significance must also be given to the fact that the MMPA applies to unlawful acts that occur before, during or *after* the sale. When interpreting the MMPA, the Court must ascertain the intent of the legislature from the express language used in the statute and give that intent effect if possible. *Antle v. Reynolds*, 15 S.W.3d 762, 766 (Mo. Ct. App. 2000) (citing, *Wolff Shoe Co. v. Director of Revenue*, 762 S.W.2d 29, 31 (Mo. banc 1988)). This should be done using the plain and ordinary meaning of all of the language used in the statute unless the statute provides a definition and is guided by the apparent purpose in enacting the language in question. *Id*. (internal citations omitted).

The Eastern District Court of Appeals in the *Prof'l Debt Mgmt*. case did not attempt to balance each of these provisions equally. As a result, the court's interpretation of "in connection with" largely abrogates "after the sale," and thus insulates post-sale unlawful acts from MMPA liability.

The overly restrictive definition of "in connection with" as set forth by the Eastern District Court of Appeals in the *Prof'l Debt Mgmt*. opinion is also completely at odds with the precedent set forth by the Missouri Supreme Court in *Gibbons v. J. Nuckolls, Inc.*, 216 S.W.3d 667 (Mo. 2007). In that case, the Supreme Court of Missouri settled the issue of whether a

non-party to a sale could violate the MMPA. Specifically, the Court held that an automobile wholesaler can violate the MMPA by failing to disclose a vehicle's accident history prior to selling it to a dealership, which then subsequently sells it to a consumer. *Id*. at 668-669. "The statute's plain language does not contemplate a direct contractual relationship between plaintiff and defendant." *Id*. at 669. To hold otherwise would undermine the fundamental purpose of the MMPA: <u>the protection of consumers</u>." *Id.* at 669. (Emphasis added).

Finally, Plaintiff states that current state of Missouri Law on the issue of whether the MMPA applies to the alleged wrongful conduct of mortgage servicers which occurs after the initial sale transaction is no way settled or clear. Recently, the Supreme Court of the State of Missouri granted applications for transfer on two cases: *Watson v. Wells Fargo*, SC93769, and *Conway v. Citimortgage*, SC93951. In each case, a Missouri trial court granted summary judgment to the mortgage servicer Defendant based on the idea that the mortgage servicer's conduct was not "in connection with the original sale of the real estate." Each case was fully briefed by the parties, and oral arguments in each case were heard by the Court on April 2, 2014. Plaintiff urges this Honorable Court to deny the motion to dismiss without prejudice pending a ruling by the Missouri Supreme Court.

### III. Plaintiff Has Stated a Claim for Slander of Title (Count IV)

Nationstar argues that it cannot be liable for slander of title because publishing was accomplished by its attorney and Trustee and not directly by an employee of Nationstar. Nationstar attempts to hide behind and shield itself from liability for its wrongful decision to foreclose on the house and have a notice of sale published by pointing the finger at its Trustee without disclosing the exact nature of the relationship between Nationstar and the Trustee.

7

Nationstar also argues that the Trustee cannot be liable for slander of title because the Trustee had no obligation to investigate before publishing the notice of sale. Memorandum in Support, Docket #19 at p. 6. This argument is a red herring as the Trustee's liability is not before this Court as the Trustee is not a party to the litigation.

The decision and instruction to foreclose and publish the notice of sale was Nationstar's.[1] As part of its effort to enforce the note and security instrument, Nationstar engaged the law firm of Martin, Leigh, Laws & Fritzlen, P.C. as its attorneys and to act as Trustee to foreclose on her home. Amended Petition, Docket # 7 at ¶¶ 61, 62 & Exhibit LL.

It has long been the position of the state of Missouri that an "attorney is the agent of the party employing him . . . and any act of the attorney must from necessity be considered as the act of his client. . . . This principle is so well understood and has been so long acted upon as to render it almost useless to refer to it." *Price v. State,* 422 S.W.3d 292, 302 (Mo. 2014)(emphasis removed)(quoting, *Kerby v. Chadwell,* 10 Mo. 392, 393–94 (1847)).

More specifically, Missouri courts have stated "[t]he trustee is considered to be the agent of both the debtor and creditor. . ." *Killion v. Bank Midwest, N.A.,* 987 S.W.2d 801, 813 (Mo.App. W.D. 1998)(citing, *Edwards v. Smith,* 322 S.W.2d 770, 777 (Mo. 1959)). It is a fundamental and irrefutable principle of Missouri law that the Trustee, in publishing the Notice of Sale, was acting as the agent of Nationstar as the attorney and Trustee retained by Nationstar. Nationstar can be held liable for this publication by its agent.

Defendant's argument that a trustee need not investigate absent some actual knowledge ignores a considerable portion of the facts pled in regarding Plaintiff and her counsel's communications with Nationstar and the Trustee. Plaintiff specifically pled that she provided

---

[1] Referenced in paragraph 44 of Plaintiff's Amended Petition and attached thereto as Exhibit Y is an April 19, 2013 letter from Nationstar to Jeannie May providing formal Notice of Default and Nationstar's intent to enforce the provisions of the note and security instrument.

8

direct notice in phone calls and letters to both Nationstar and the Trustee of lack of authority to foreclose because the account was current based on the bankruptcy proceedings, completion of bankruptcy plan, and continued payments after the plan was completed. Amended Petition, Docket # 7, at ¶¶ 30, 41-42, 57, 62, 64. Despite this knowledge, Nationstar requested that the Trustee foreclose and the Trustee published Notice of Foreclosure despite Nationstar and the Trustee knowing that it had no right to foreclose. The Trustee published such notice in its capacity as agent for Nationstar. Neither Nationstar nor its attorney/agent/trustee conducted a proper investigation or otherwise properly determined that Nationstar had any right to foreclose. Instead, the Notice of Foreclosure was published with full knowledge that the notice was false.

Because the notice was filed not only without legal justification, but also was not innocently or ignorantly made, the malice necessary for slander of title claim can be inferred from the facts that have been pled. *First Nat. Bank of St. Louis v. Ricon, Inc.*, 311 S.W.3d 857, 867 (Mo.App. E.D. 2010).

Plaintiff has stated an actionable claim for slander of title against Nationstar.

**IV.    Plaintiff Has Stated a Claim for Invasion of Privacy (Count V)**

Defendant argues that it cannot be liable for invasion of privacy because there is no allegation of "a secret and private" matter. Memorandum in Support, Docket # 19 at p. 7. Defendant further argues that the conduct alleged was not highly offensive. *Id.* The first argument ignores the definition of intrusion upon seclusion adopted by the Supreme Court of Missouri. The second argument asks this court to usurp the prerogative of the jury in determining whether something would be highly offensive to a reasonable person.

The Supreme Court of Missouri stating that invasion of privacy is "the right to be left alone" adopted the definition of intrusion upon seclusion found in the Restatement (Second) of Torts § 652B, which states:

> One who intentionally intrudes, physically or otherwise upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

*Sofka v. Thal*, 662 S.W.2d 502, 510 (Mo. 1984).[2] This definition clearly includes both intrusions upon solitude or seclusion and intrusions into private affairs or concerns. Defendant seeks to limit intrusion upon seclusion to intrusion into private affairs or concerns. This argument ignores both the facts pled and the definition of intrusion upon seclusion adopted by the Missouri Supreme Court that encompasses intrusion "physically or otherwise upon the solitude or seclusion of [Ms. May]."

Defendant instead relies on a 1998 Missouri Court of Appeals case for its elements of intrusion upon seclusion, recognizing that these elements found their genesis in a 1978 Missouri Court of Appeals case, *Corcaran v. Southwestern Bell Telephone Co.*, 572 SW2d 606, 609-610 (Mo. Ct. App. 1978). Memorandum in support, docket number 19 at page 7. *Corcoran* predates the adoption of the Missouri Supreme Court of the restatement seconds definition of intrusion upon seclusion. Although the *Corcoran* Court acknowledges the restatements division of invasion of privacy into four distinct categories, its holding does not rely on the definition of intrusion upon seclusion adopted by the Supreme Court in *Sofka*, relying instead on Michigan case law. *Id.* at 215.

---

[2] The Eighth Circuit Court of Appeals has also relied upon his definition of intrusion upon seclusion but in that case found that the physical invasion of plaintiff's private property to determine when and if the plaintiff was sleeping was intrusion into private affairs. *Ruzicka Elec. and Sons, Inc. v. I.B.E.W., Local 1, AFL-CIO*, 427 F.3d 511, 523-525 (8th Cir. 2005).

The Missouri Supreme Court in *Sofka* considered Corcoran in making its decision but only cited with approval to its determination that publication was not required for intrusion upon seclusion. *Sofka*, 662 S.W.2d at 510. The *Sofka* Court did not adopt or apply the elements stated in *Corcoran* for intrusion upon the solitude or seclusion of another. *Id.* Subsequent cases, including S*t. Anthony's Medical Center v. H.S.H*, 74 S.W.2d 606 (Mo. Ct. App. 1998), rely on the elements for intrusion upon seclusion that predate the *Sofka* Court's adoption of the restatement's definition of intrusion upon seclusion. *Id*. at 609-611; *see also*, *Crow v. Crawford & Co*., 259 S.W.3d 104, 120-121 (Mo. Ct. App. 2008); *Hester v. Barnett*, 723 S.W.2d 544, 562-563 (Mo. Ct. App. 1987); *Schupmann by Schupmannv. Empire Fire and Marine Ins*. Co., 689 S.W.2d 101, 102 (Mo. App. Ed. 1985). Defendant's reliance upon the *Corcoran* elements for intrusion upon seclusion without consideration the *Sofka* Court's adoption of the restatement's definition of intrusion upon seclusion including intrusion upon the solitude or seclusion of another is in error.

In 2005, this Court determined that status of Missouri law on invasion of privacy in denying a motion to dismiss. In making its decision the Court stated:

> In support of the privacy claim . . . , plaintiff alleges that defendant "undertook and/or directed a series of communications to the home of the Plaintiff constituting an invasion of privacy," and further that the communications "were systematic and continuous in number and made in disregard for Plaintiff's right to privacy after repeated requests that [defendant] no longer contact him." Taking these allegations as true, the Court is unable to conclude that plaintiff could never on such a basis establish a right to relief under Missouri's formulation of the right of privacy, which is violated by intentional and objectively offensive intrusions upon one's solitude or seclusion.

*Burkhalter v. Lindquist & Trudeau, Inc*., 2005 WL 1983809, 2 (E.D.Mo. 2005)(internal citations omitted).

In the present matter, Plaintiff has alleged repeated phone calls, at home and work, and repeated written communications sent to her home including threats of foreclosure and institution of foreclosure proceedings culminating in her home being set for forced sale. All intruded upon her right "to be left alone," or her right to solitude and seclusion in her home. Defendant's conduct was all the more unreasonable because its collection campaign was undertaken with full knowledge that it was seeking payment of **amounts Ms. May did not owe**. *See*, Amended Petition, Docket # 7 at ¶¶ 3, 29, 31-33, 36-38, 40, 42-51, 53, 55, 58-59, 61, 66, 106-110. This is not a simple matter of a few polite telephone calls to collect a debt that was owed, the kind of effort a debtor must reasonably expect when behind on payments. Instead, this was an automated, systematic, collection campaign seeking payments of amounts that were not owed and that continued despite all of Ms. May's placing Nationstar with the evidence that NO DEBT WAS OWED, the same information that Nationstar maintained in its own possession and that it always knew. The unreasonableness of this collection campaign was further demonstrated by the continued threats to foreclose when no such action could legally be taken as she was not in default. Demands for payments of amounts not owed and threats to foreclose for failing to make such payments are highly offensive to a reasonable person and in context are unconscionable things to say to homeowner who completed a sixty month repayment program curing all delinquency, no matter the tone or tenor of the debt collector.

Unlike "the 6 to 8 polite telephone calls" at issue in *Sofka*, 662 SW2d at 511, the letters and calls in the present matter lasted over an eight month period, were of lengthy duration, involved Ms. May speaking to different representatives, none of whom seemed to have reviewed her account or who would acknowledge that her loan was current, involved collection of amounts that Nationstar had admitted were not due, involved threats of foreclosure and persistent

demands for payment. Given Nationstar's refusal to listen to Ms. May, ignoring her evidence that no debt was owed, persisting in demanding money with the over hanging threat of foreclosure and making her repeat her story to nearly every person she spoke with, plausibly could constitute highly offensive conduct to a reasonable person.

## V. Plaintiff Has Stated an Equitable Claim for Wrongful Foreclosure (Count VI)

Plaintiff sought monetary damages for her claim of wrongful foreclosure. Plaintiff agrees that without an actual sale of the property monetary damages are not available for this claim and absent some future wrongful non-judicial foreclosure sale will not seek monetary damages for wrongful foreclosure. Plaintiff also brought suit in equity for wrongful foreclosure seeking injunctive relief pursuant to Missouri case law which states:

> A claim for wrongful foreclosure has been used . . . as a suit in equity to set aside the sale of a property. . . . Generally, a wrongful foreclosure claim has the same basic elements as a suit in equity or in law. These include: (1) the commencement of foreclosure by sale of a deed of trust, (2) at a time where the mortgagor has committed no breach of condition or failure of performance that would authorize foreclosure, (3) so that the foreclosure is absolutely void.

*Lackey v. Wells Fargo Bank, N.A.*, 2012 WL 4801080, 3 (W.D.Mo.) (W.D.Mo. 2012). Defendant withdrew the sale set for February 24, 2014. Plaintiff's claim in equity for wrongful foreclosure appears to be moot but any dismissal of this claim should be subject to the right to amend and/or supplement the pleadings pursuant to FRCP 15(d) if Defendant should take any action during the pendency of this lawsuit to schedule an additional non-judicial foreclosure sale.

## **CONCLUSION**

Wherefore, Plaintiff respectfully requests that this Court deny Defendant's Motion to Dismiss.

Respectfully submitted,

**HUMPHREYS WALLACE HUMPHREYS, P.C.**

By:   /s/ Lucius James Wallace
Robert David Humphreys, OBA # 12346,
  *Pro Hac Vice*
Lucius James Wallace, OBA # 16070,
  *Pro Hac Vice*
9202 South Toledo Avenue
Tulsa, Oklahoma 74137
918-747-5300 Telephone
918-747-5311 Facsimile

Robert T. Healey, Jr., MO Bar No. 34138
Healey Law LLC
640 Cepi Drive, Suite A
Chesterfield, Missouri 63005
636-563-5175 Telephone
636-590-2882 Facsimile
**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that on the 8th day of May, 2014, I electronically transmitted the foregoing document to the Court Clerk using the ECF System for filing. The Court Clerk will transmit a Notice of Electronic Filing to the following ECF registrants:

Kevin M. Abel
Rhiana A. Luaders
Bryan Cave LLP
One Metropolitan Square
211 N Broadway, Ste 3600
St. Louis, MO 63102
*Attorneys for Defendant Nationstar Mortgage LLC*

      /s/ Lucius James Wallace