IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| 1.  JEANNIE K. MAY, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )  Case No.: 4:14-CV-578-TCM |
| | ) |
| 1.  NATIONSTAR MORTGAGE, LLC. | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE EXPERT TESTIMONY OF DANIEL MAESTAS, M.D. (DOCKET 85)**

Comes now the Plaintiff and hereby objects to Defendant's Motion to Exclude Expert Testimony of Daniel Maestas, M.D. (Docket 85).  In support of said objection, Plaintiff states the following:

Defendant objects to the admission of the testimony of Plaintiff's treating physician, Dr. Maestas.  Dr. Maestas earned an undergraduate degree in Psychology from St. Louis University in 1983 and earned a doctorate of medicine from St. Louis University in 1987.  Defendant's Ex. 3 at 7:3-22.  After a three year residence in family medicine at St. John's Mercy in St. Louis he went into private practice.  Id. at 8:13-20.  He has been a licensed practicing physician since 1988.  Id. at 1988.

Dr. Maestas was not engaged for the purposes of litigation.  Instead, Dr. Maestas has been Ms. May's treating physician for approximately 10 years. Defendant's Exhibit 3 at 11:7-20.   His diagnoses was not made in a litigation setting but rather as part of his continuing care of Ms. May as her primary care physician.  Defendant's Exhibit 3 at 9:21-24, 11:7-20.There is no objection to Dr. Maestas credentials as a treating physician in diagnosing and treating Ms. May's anxiety.  Instead, Defendant attacks the diagnosis as not fully complying with the DSM-5 and makes such attack by

presenting the report of its expert, hired for the purpose of this litigation, and without ever meeting or examining Ms. May.

I.  **Strict Adherence to the DSM-5 is NOT Required for Admissibility of this Testimony**

This Court has stated "courts addressing this issue rarely exclude an expert from testifying under *Daubert* for failure to adhere to the DSM." *Lingo v. Burle*, 2008 WL 1914148 (E.D. Mo. 2008). Like the physician in Lingo, Dr. Maestas provided a diagnosis under the DSM. He used the code that Defendant's expert admits is a DSM-5 code for "Other Specified Anxiety Disorder." Docket 86-4 at p. 14. The issue is an alleged failure to fully adhere to the DSM-5 by not providing a specific reason why Plaintiff does not meet the criteria for any of the specifically listed anxiety disorders. Id. But such a failure, if it exists, is not grounds to exclude the testimony.

"As commentators have repeatedly observed, 'mental health professionals involved in everyday practice may disagree more than half the time even on major diagnostic categories' . . . . Therefore, a variance from the DSM's diagnostic criteria will not automatically result in an unreliable diagnosis. Instead, after *Daubert*, '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *S.M. v. J.K.*, 262 F.3d 914, 921-22 (9th Cir. 2001)(Cited with approval *Lingo v. Burle*, 2008 WL 1914148 (E.D. Mo. 2008)). Here rather than a "shaky" opinion, defendant seeks to supplant the treatment based opinion of a family physician that was made pre litigation solely for patient care with that of a paid witness willing to opine based on review of paper alone. Whether the DSM text is entitled to "biblical" deference is a matter for a jury. This is especially so because the DSM is based on a consensus of opinions of selected members of the American Psychiatric Association, without evidence based in biological science, that has been revised and changed five times. The variance from the DSM-5 complained of here is

not grounds for exclusion of the testimony. The jury should be allowed to weigh the testimony of the treating physician against that of Defendant's expert.

## II. Courts and Physicians Recognize Situational Anxiety as a Diagnosis

Defendant argues "there is no medical or psychiatric diagnosis of 'situational anxiety.'" (Docket # 86 at p. 2 (emphasis removed)). This statement is not given support when made but later in its memorandum Defendant relies wholly on its paid witness' opinion that (1) "the DSM-5 'contains a listing of diagnostic criteria for every psychiatric disorder recognized by the U.S. healthcare system.' . . . [and] the DSM-5 does not contain diagnostic criteria for a condition called 'situational anxiety.'" (Docket # 86 at p. 3(emphasis removed)). While the DSM-5 may not include "situational anxiety," the determination that the U.S. healthcare system does not recognize this disorder is not supported by case law or other evidence.

In more than one hundred cases presented to Administrative Law Judges and appealed to U.S. District Courts and U.S. Circuit Courts, individuals have sought social security disability based at least in part on diagnoses from treating physicians, including psychiatrists and psychologists, of situational anxiety. Attached hereto as Appendix A is a chart of citations and summaries of cases decided by U.S. District Courts outside the state of Missouri[1]. These cases make it clear that regardless of the position of the DSM-5 on such a diagnosis, the U.S. healthcare system has repeatedly recognized situational anxiety as a diagnosable and treatable condition.

The 6th and 10th Circuits have also addressed the issue of "situational anxiety." The 6th Circuit reviewed a denial of disability benefits by an Administrative Law Judge ("ALJ") which was subsequently upheld by the district court. *Boulis-Gasche v. Comm'r. of Soc. Sec.*, 451 Fed. Appx 488, 490-91 (6th Cir. 2011). The ALJ had determined "'reported panic disorder is not a medically

---

[1] This Appendix is limited to cases that were presented to Federal District Courts and does not provide information as to the number of decisions by ALJ's that were not appealed.

3

determinable impairment, and her situational anxiety/depression does not meet the 12-month durational requirement." *Id*. at 491.  Neither the ALJ nor the district court determined that situational anxiety is not a medically determinable impairment.  Id.  The 6th Circuit overturned the denial of benefits because the record did not support the conclusion that the anxiety did not last more than 12 months stating "[b]y concluding that some unspecified improvement in Plaintiff's mood cured any anxiety or depression that Plaintiff was experiencing, 'the ALJ impermissibly substitute[ed] his own judgment for that of a physician.'" *Id*. at 494.  Of course, the twelve month impairment rule under social security does not apply here.  The treating physician, the ALJ, the district court, and the 6th Circuit all recognized situational anxiety as a diagnosable impairment sufficient to be disabling.

In *Campbell v. Barnhart*, 56 Fed. Appx. 438 (10th Cir. 2003), the ALJ recognized that the claimant suffered from situational anxiety and depression but that these conditions only placed slight restrictions on that individuals ability to maintain social function.  *Id*. at 439-440.  The 10th Circuit found that the record supported the ALJ's determination that the situational anxiety was not of sufficient severity to result in disability.  *Id*. at 441.  Once again, the ALJ, the treating physician, and the Circuit Court all recognized the situational anxiety as a diagnosable condition.  The issue was not the existence of the condition but rather the level of impact on social function of the condition.

In addition, physicians have repeatedly diagnosed situational anxiety in cases involving appeals of social security disability as well as an action under the FMLA before the Eastern District of Missouri.  *Dunton v. Colvin*, 2015 WL 402013 (E.D. Mo. 2015) (diagnosis of situational anxiety presented to appeals council); *Hagler v. True Mfg, Inc.*, 2013 WL 3243374 (E.D. Mo. 2013)(Diagnosis of situation anxiety to be treated with medication in an action brought under the

FMLA); *Shrout v. Astrue*, 2013 WL 772827 (E.D. Mo. 2013)(ALJ recognized diagnosis and treatment for, among other things, situational anxiety); *Bailey v. Astrue*, 2011 WL 482884 (E.D. Mo. 2011)(ALJ decided that there were severe impairments including situational anxiety but denied disability claim for lacking "major impairments." Case was remanded for further consideration at ALJ's motion).  Contrary to Defendant's assertions the medical community in the Eastern District of Missouri has recognized, diagnosed and treated situational anxiety.  Similar diagnoses have been presented to the Western District of Missouri.  *Affandi v. Colvin*, 2014 WL 4055802 (W.D. Mo. 2014)(diagnosis of situational anxiety and prescription for valium and alternative treatments); *Larson v. Astrue*, 780 F. Supp. 2d 935 (W.D. Mo. 2011)(Physician diagnosed and treated and Psychologist recognized diagnosis of situation anxiety).

Defendant's assertion that situational anxiety is not recognized in the U.S. Healthcare System is not supported by evidence or case law.

**III.     The *Daubert/Kuhmo* Factors Support Admissibility**

Federal Rule of Evidence 702 allows a witness who is qualified as an expert to testify as to an opinion if "(a) the expert's . . . knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." *Id.* The Supreme Court has identified a list of nonexclusive factors that courts should consider in gauging an expert's reliability:

(1) whether the theory or technique can be tested;

(2) whether it has been subjected to peer review and publication;

(3) whether the theory or technique has a high known or potential rate of error; and

(4) whether the theory has attained general acceptance within the scientific community.

5

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 593-94 (1993). These factors apply not only to testimony based on scientific knowledge but also to testimony based on technical or other specialized knowledge. *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141 (1999). Along with these factors, this Court may also consider "whether the expertise was developed for litigation or naturally flowed from the expert's research; whether the proposed expert ruled out other alternative explanations; and whether the proposed expert sufficiently connected the proposed testimony with the facts of the case." *Presley v. Lakewood Eng'g & Mfg. Co.,* 553 F.3d 638, 643 (8th Cir. 2009). Other relevant factors include whether the expert developed his opinions independently of the current litigation, and whether the expert used the same level of care in reaching his opinions as he would use in his regular professional work. Fed. R. Evid. 702 Advisory Committee Notes.

"The test of reliability is 'flexible,' and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Kumho,* 526 U.S. at 141. District courts are given broad latitude in deciding how to determine a particular expert's reliability. *Id.* at 142. But this Court's "primary focus" must be on the expert's "principles and methodology, not on the conclusions that they generate." *Daubert,* 509 U.S. at 595.

As discussed above, hundreds of treating physicians have diagnosed and treated situational anxiety, including treating such disorder with controlled substances that must be prescribed for a medical purpose. These physicians have testified before ALJ's and had the medical records for their patients examined by ALJ's with hundreds of these judges determining that the diagnosis was supported by evidence. Hundreds of these decisions were then examined by U.S. District and Circuit Courts. As is demonstrated by these cases, the diagnosis and methodology has been applied

6

generally in the medical community despite an absence of this specific term in the DSM-5 and recognized repeatedly by the Social Security Administration.

In addition, the diagnosis by Dr. Maestas stems from his years of experience in treating patients and his observation and treatment of the Plaintiff for years.  Dr. Maestas testified that from 2010 until 2013, Ms. May's arthritis and migraines were well controlled with medicine and her depression was controlled without medicine.  Defendant's Ex. 3 at 12:13-25:24.  Beginning in March of 2013, Ms. May began complaining of abdominal pain and Dr. Maestas testified that stress was a contributing factor to this pain. Id. at 29:9-35:11.  In September of 2013, Ms. May first began complaining regarding anxiety.  Id. at 35:12-36:6.  Dr. Maestas testified that this anxiety includes fear and feeling threatened and is directly related to fear of losing her home.  Id. at 36:10-38:9.  Dr. Maestas diagnosed Ms. May with situational anxiety and depression with specific triggers including the major trigger of the threat to her home.  Id. at 43:9-46:13.  He determined the threat to her home was the major trigger because the stressors at work had existed for some time without triggering the anxiety and depression.  Id.  This situational anxiety and depression were medically significant and required treatment with prescription.  Id. at 47:18-48:10.

Dr. Maestas opinion and diagnosis was not formulated for the sake of litigation but rather as part of Dr. Maestas continuing role as Ms. May's primary care physician.  This diagnosis was based on continuing observation of his patient over several years including the observation and diagnosis of new symptoms in 2013.  It was provided independent of this litigation and with the care and diligence with which Dr. Maestas approaches his profession.  Contrary to Defendant's position, this level of care, treatment and observation is why individuals are encouraged to have a primary care physician that they visit regularly for checkups so that the physician will be aware of just such

changes in the patient and be able to diagnose and treat accordingly.  This methodology is well founded in family practice.

There are multiple factors demonstrating the reliability of Dr. Maestas testimony.  The Jury should be allowed to weigh this testimony against the opinion of Defendant's expert that no such diagnosis exists.

WHEREFORE, Plaintiff respectfully requests that Defendant's Motion be denied.

Respectfully submitted,

**HUMPHREYS WALLACE HUMPHREYS, P.C.**

By:  _/s/ Luke Wallace_____
David Humphreys, OBA # 12346, *Pro Hac Vice*
Luke J. Wallace, OBA # 16070, *Pro Hac Vice*
9202 South Toledo Avenue
Tulsa, Oklahoma 74137
918-747-5300 Telephone
918-747-5311 Facsimile

Robert T. Healey, Jr., MO Bar No. 34138
Healey Law LLC
640 Cepi Drive, Suite A
Chesterfield, Missouri  63005
636-563-5175 Telephone
636-590-2882 Facsimile
**ATTORNEYS FOR PLAINTIFF**

Case: 4:14-cv-00578-TCM   Doc. #:  88   Filed: 05/13/15   Page: 9 of 9 PageID #: 1849

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 13th day of May, 2015, I electronically transmitted the foregoing document to the Court Clerk using the ECF System for filing.  The Court Clerk will transmit a Notice of Electronic Filing to the following ECF registrants:

Kevin M. Abel
Rhiana A. Luaders
Amy E. Breihan
Bryan Cave LLP
One Metropolitan Square
211 N Broadway, Ste 3600
St. Louis, MO  63102
*Attorneys for Defendant Nationstar Mortgage LLC*

                                        /s/ Luke Wallace

9