THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| JEANNIE K. MAY, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 4:14-CV-578-TCM |
| NATIONSTAR MORTGAGE LLC, | § § § | |
| Defendant. | § | |

**DEFENDANT'S TRIAL BRIEF**

Defendant Nationstar Mortgage LLC ("Nationstar") hereby submits this trial brief to aid the Court in its consideration, as follows:

## I.  OVERVIEW

At trial, Nationstar will acknowledge that it made some errors with regard to servicing Plaintiff's mortgage loan. However, Nationstar firmly believes that the evidence will conclusively demonstrate that those errors were made in good faith and without any intent to harm Plaintiff or otherwise act with malice. Further, the evidence will also show that Nationstar corrected the errors and addressed the various issues with Plaintiff's loan. Nonetheless, Plaintiff continues to assert that she was gravely injured and seeks actual, statutory and punitive damages, as well as costs and attorney's fees.

In the course of this trial, Nationstar believes that the Court will likely confront the following issues:

1) What actual damages Plaintiff can recover for each of her claims? Plaintiff's actual (or statutory damages) are nominal or are related to matters that are not recoverable.

2) Plaintiff's claim of emotional distress and whether the medical testimony supporting such claim is admissible or legally sufficient. The issue of whether there is legally sufficient evidence of emotional distress and which claims, if any, allow for its recovery will be a significant issue.

3) Whether there is any evidence of wrongful intent on the part of Nationstar thus allowing the jury to consider certain claims that require intent and/or punitive damages. The issue of intent will be important to the defense of good faith but also will mitigate or eliminate certain claims as well as Plaintiff's efforts to recover punitive damages.

4) What evidence is relevant to Plaintiff's claims regarding Nationstar's treatment of her loans. Plaintiff may seek to call other borrowers or delve into unrelated issues.

These issues and others are discussed below.

## II. SUMMARY OF THE EXPECTED FACTS

At trial, Nationstar expects to prove that it assumed servicing rights to Plaintiff's loan in November 2010. Plaintiff completed payments under the Chapter 13 Plan in late 2012. However, in early 2013, Nationstar believed that Plaintiff's loan was delinquent.

Evidence at trial will show that Nationstar came to this belief in good faith due to a series of accounting errors. In 2008, the prior servicer, CitiMortgage, received a bulk check from the bankruptcy trustee intended as bankruptcy plan payments on several different loans. Five years later, in January 2013, Nationstar discovered the bulk check had been applied to only one loan, and CitiMortgage requested a refund of all but the portion of the check intended for that single loan account.

On or about March 28, 2013, Nationstar refunded CitiMortgage for the excess monies, drawing the refund from Plaintiff's account. This was in error and the funds should have been drawn from a different borrower's account. This created the appearance of a delinquency on Plaintiff's account. As a result, collection calls were initiated and several payments from Plaintiff were rejected because they were not provided in certified funds (required for loans in default status, which is how Plaintiff's account appeared to employees at the time in Nationstar's records). Nationstar later initiated the foreclosure process believing the account was delinquent.

On April 30, 2014, Nationstar discovered that the refund to CitiMortgage should have been funded from a different account, not Plaintiffs account, and reapplied to Plaintiffs account the total amount of the money removed approximately one year earlier. The lender paid expenses and late charges that appeared on Plaintiff's April 5, 2013 statement have been waived or otherwise removed from Plaintiffs account, without any payment by Plaintiff of such amounts. Previously rejected payments were accepted and applied to reduce the loan balance. Prior negative credit reporting was corrected. Nationstar has acknowledged that the errors that were made, as well as the fact that all issues with Plaintiffs loan account had been remedied, including the derogatory credit reporting and delinquent status and collection efforts.

### III. **PLAINTIFF'S CLAIMS**

Plaintiff is pursuing nine counts: (i) violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605 ("RESPA"); (ii) violation of the Missouri Merchandising Practices Act ("MPA"); (iii) violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"); (iv) slander of title; (v) invasion of privacy; (vi) breach of contract; (vii) violation of the RESPA for conduct after the suit filing; (viii) violation of the MPA for conduct after the suit filing; and (ix) violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA").

The Court dismissed one of Plaintiff's claims (wrongful foreclosure) on November 19, 2014 following Nationstar's Motion to Dismiss.

Plaintiff seeks an unspecified amount of actual and statutory damages, as well as attorney's fees. The primary claim for actual damages is for alleged emotional distress. She also seeks punitive damages.

## IV. RELEVANT LEGAL ISSUES

### A. Plaintiff's Claim for Actual Damages.

Plaintiff has little to no actual damages and generally is pursuing damages from emotional distress. A brief review of her claims for actual damages follows.

**1. Damage to Credit Rating.** Plaintiff claims that the credit information due to Nationstar's error has caused actual damages, precluding her from borrowing money to buy another house. However, the only evidence Plaintiff produced in discovery pertaining to her alleged damages as a result of Nationstar's credit reporting were two letters from World's Foremost Bank, dated May 5, 2014 and August 20, 2014, denying her application for a Cabela's Visa credit card. At her deposition, she testified that being rejected for these two credit cards did not prevent her from purchasing any necessities or any other items which she would otherwise purchase. In fact, Plaintiff seemed to imply that she applied for the card just to see if she qualified, not because she needed the line of credit. Furthermore, World's Foremost Bank's corporate representative will not be able to testify that Nationstar's reporting of Plaintiff's mortgage loan account was the sole reason that she was denied credit.

## 2. Purported Lost Equity in Property.

Plaintiff's alleged damages for lost equity in the property are speculative. Plaintiff claims that if and when she sells the house in the near future she will not be able to fetch as high a price as she could have over the past two years.

Yet Plaintiff never lost possession or ownership of the property. She never put the house up for sale or spoke to a realtor about the possibility of doing so. Instead, these alleged damages are estimated by her based on Plaintiff's review of online realty websites (such as Zillow, Trulia, and Coldwell Banker), her conjecture that she *could* have sold the house at some point in the past couple years, and her conclusion that the value of the home has fallen below the balance on her loan. Plaintiff produced no real estate appraisals to support her claim, and she did not identify any real estate professional as an expert witness on value. These alleged damages are too speculative to be submitted to the jury or to be recoverable.

## 3. Lost Income.

In May 2014, after the suit was filed, Plaintiff quit her long term job; she says it was to remove one aspect of stress from her life. Less than five months later, she was back at work with the same employer, but with a different title and without the tenure she had accumulated at her prior position. Accordingly, she makes less money ($18.03/hour vs. $27.93/hour), cannot contribute to her 403B retirement savings plan, and pays less to Social Security ($78.76 biweekly vs. $130.65 biweekly). Plaintiff claims that Nationstar should compensate her for this loss.[1]

Plaintiff should not be able to tell the jury that she is entitled to recover lost income from Nationstar. It was Plaintiff's unilateral decision to quit her job, and she admittedly did so, at least in part, because of the stress at her job. She testified that she did not inquire as to her employer's

---

[1] She also claims damages for taxes paid because Nationstar improperly reported her loan interest payments to the Internal Revenue Service, but she has not quantified this amount and is not qualified to do so.

leave policies before quitting. Nationstar did not force Plaintiff to quit her job. Plaintiff independently made the decision to quit and then months later return. There is no causation evidence linking Nationstar to any lost income from the employment decisions that Plaintiff herself independently made. This is another case of overreaching.

### 4. <u>Out of Pocket Damages</u>.

The only out-of-pocket damages Plaintiff claims are copays for medical visits, moving costs when faced with the foreclosure notice (e.g., gas and packing materials), and mailing costs. Plaintiff testified that her medical co-pays totaled approximately $75 and packing material costs were approximately $105.

### 5. <u>Statutory Damages, Fees & Costs</u>.

RESPA permits recovery of actual damages plus, where a plaintiff can prove a pattern and practice of noncompliance with RESPA, additional damages up to $2,000. 12 U.S.C. § 2605(l)(1). Actual damages under the FCRA are capped at $1,000 per violation. 15 U.S.C. § 1681n(a)(1). The FCRA also permits for the award of punitive damages for "willful noncompliance" and, in the event Plaintiff prevails on her claims, the award of costs and reasonable attorney's fees. 15 U.S.C. § 1681n(a)(2)-(3).

The FDCPA permits recovery of statutory damages not to exceed $1,000 per violation in addition to any actual damages suffered, including emotional distress. 15 U.S.C. § 1692k(a). In this case, the total number of telephone calls, suspense notices, written statements and other correspondence from Nationstar to Plaintiff totaled 32. Assuming each of these qualifies (a fact Nationstar disputes), the maximum statutory damages which Plaintiff could possibly recover under FDCPA are $32,000. No punitive damages are allowed under the statute.

### B. Plaintiff's Claim for Emotional Distress.

Plaintiff's primary claim is for emotional distress damages. These damages can be difficult to prove and, at least in the tort context, require that the emotional distress be "medically diagnosable" and severe enough to be "medically significant." Several issues may arise. *First*, Nationstar continues to challenge Plaintiff's expert, Dr. Maestas. Nationstar will assert these challenges at trial.

*Second*, Plaintiff's medical records reveal that she suffered from stress both at home and at work from other sources. Plaintiff's treating physician, Dr. Maestas, diagnosed her with "situational anxiety" on September 23, 2013. As of the date of that diagnosis, Dr. Maestas had been treating Plaintiff for chronic depression and chronic migraines, among other things, for over six years. Dr. Maestas could not identify Nationstar's conduct as the sole proximate cause of Plaintiff's stress. Moreover, Dr. Maestas never referred Plaintiff to a therapist or psychiatrist, and Plaintiff testified that her anxiety symptoms never were so severe that she sought assistance of a therapist. Significantly, the medical records themselves limit the timing of the situational anxiety diagnosis to a period of less than nine months.

Nationstar's rebuttal witness, Dr. Rothschild, is a decorated medical doctor and researcher certified as a specialist in Psychiatry by the American Board of Psychiatry and Neurology. Dr. Rothschild will point out that each of Plaintiff's documented chronic health issues (depression, migraines, rheumatoid arthritis and Sjogren's syndrome) increased her likelihood of developing anxiety. Dr. Rothschild will opine that Plaintiff's anxiety symptoms could be explained based on her existing risk factors and other noted stressors, even if she never had any communications with Nationstar. He also will opine that when there are multiple documented stressors, as is the case with Plaintiff, one cannot conclude that a specific stressor was the sole or major cause of a

patient's anxiety symptoms. This opinion raises an issue on the causation element of Plaintiff's key damages presentation to the jury.

Finally, Dr. Rothschild will testify that there is no accepted medical or psychiatric diagnosis called "situational anxiety." The fact that Dr. Maestas testified multiple times that situational anxiety is a medically-recognized diagnosis when it is not even included in the profession's recognized diagnostic authority, the DSM-5, should led to his diagnosis being excluded.

*Third,* several of Plaintiff's claims do not allow for the recovery of emotional distress. For example, to recover damages under the MPA, a plaintiff must suffer an "ascertainable loss of money or real or personal property," and the loss must be "sufficiently definite and certain." *Pleasant v. Noble Fin. Corp.*, 54 F. Supp. 3d 1071, 1079 (W.D. Mo. 2014), *citing Ford v. St. Louis Metro. Towing,* L.C., No. 4:09CV0512TCM, 2010 WL 618491, at *13 (ED. Mo. Feb. 18, 2010). In the *Ford* opinion, the court held that damages for humiliation or emotional distress were not an ascertainable loss of money or property and therefore not recoverable under the MPA. Other claims (such as breach of contract) also do not permit such recovery.

C. **Nationstar's Intent and Good Faith Belief in its Actions.**

The evidence at trial will show that Nationstar acted in good faith belief that Plaintiff's loan was delinquent. This is important for three reasons. *First*, some claims (such as the FDCPA) allow for a "bona fide error" defense, which provides that a debt collector may not be held liable if it is shown by a preponderance of the evidence that the violation was not intentional and resulted from bona fide error.

*Second*, several of Plaintiff's claims require proof of intent. These are discussed below. Nationstar believes there is a lack of such evidence of intent.

*Third,* lack of wrongful intent or malice precludes a finding of punitive damages.

1. **Alleged FDCPA Violations (III).**

Plaintiff alleges that Nationstar misrepresented the status and amount of the debt, and failed to verify the debt in response to two faxes sent by Plaintiff to Nationstar disputing the debt. Plaintiff cannot state a claim for failure to verify under 15 USC § 1692g in response to two faxes she also alleges were QWRs under the separate RESPA statute. The key question is the extent of any actual damages, other than limited statutory damage amounts, and attorney fees. No punitive damages are pleaded or allowed under the FDCPA.

2. **Alleged Slander of Title (Count IV).**

Plaintiff's slander of title claim is based on publication of a foreclosure notice of trustee's sale. According to foreclosure counsel, the notice of trustee's sale was published from February 2, 2014 through February 20, 2014. Plaintiff alleges that Nationstar knew Plaintiff was not in default at the time it published this notice of sale.

Setting aside the fact that the notice of sale was published by Nationstar's foreclosure counsel, Plaintiff will be challenged to establish the required elements that the notice was published by Nationstar willfully and with knowledge that Plaintiff was not in default.

At the time of publication, Nationstar's system was showing Plaintiff as in default due to an accounting error. As will be proven at trial, this error was not discovered until April 30, 2014. There is no evidence of maliciousness on Nationstar's part. At the time of publication, Nationstar believed in good faith that Plaintiff was in fact in default on the loan.

Slander of title claims include an element of actual "pecuniary damages;" the only such amounts pleaded are attorney fees incurred to stop the foreclosure. Since the Plaintiff's title was

9

never altered by a foreclosure, it is hard to see what else Plaintiff could claim as a "pecuniary" loss.

### 3. Alleged Invasion of Privacy (Count V).

Plaintiff claims that collection calls placed to her by Nationstar between March and October 2013 and collection letters constitute an invasion of her privacy. The audio recordings of several of these calls will be submitted as evidence. In none of the calls does the Nationstar employee raise their voice or use threats or improper language. The number and tone of the telephone calls simply do not rise to the level of what would be considered "highly offensive to the ordinary reasonable man," a required element of proof on Plaintiff's claim for invasion of privacy.

### 4. Alleged FCRA Violations (Count X).

Plaintiff asserts that Nationstar violated 15 U.S.C. § 1681s-2(b). This statute requires that a furnisher of credit information must conduct a reasonable investigation into any disputed information brought to its attention pursuant to a notice from a credit reporting agency. Plaintiff asserts she sent such a notice to credit reporting agency and, on information and belief, contends that the agency notified Nationstar.

Importantly, technical violations of this statute provide no relief. Instead, Plaintiff must show either that Nationstar (i) *willfully* failed to investigate Plaintiff's dispute or (ii) *negligently* failed to investigate the dispute. The former entitles Plaintiff to actual damages (or statutory damages between $100 and $1000), costs and fees and "such amount of punitive damages as the court may allow." 15 U.S.C. §1681n.

The evidence tends to show that Nationstar conducted a reasonable investigation into Plaintiff's credit reporting dispute, and therefore Plaintiff will be challenged in proving her

FCRA claim. Further, there is no evidence that Nationstar willfully failed to modify, delete or block reporting of the disputed information.

The requirement that Plaintiff demonstrate actual damages before bringing a successful claim for negligent non-compliance is paramount. As indicated below, any actual damages for lost credit opportunities are speculative. The punitive damages claim under this statute has its own proof requirement of "willful noncompliance," which will be hard for Plaintiff to support given Nationstar's correction of prior negative reporting after the error was discovered. Again, the fee-shifting provisions of this statute make the claim for attorney fees appear to dwarf any claim for recovery by Plaintiff herself.

### 5. **Punitive Damages are Inapplicable.**

To make a case for punitive damages under Missouri law, Plaintiff must present "clear and convincing evidence" establishing that Nationstar's conduct was "outrageous" because of Nationstar's "evil motive" or "reckless indifference" to Plaintiff's rights. *See Walsh v. Al W. Chrysler, Inc.,* 211 S.W.3d 673, 676 (Mo. App. 2007). Punitive damages also are recoverable under the FCRA, but Plaintiff would have to demonstrate Nationstar's "willful noncompliance" with the Act.

Nationstar strongly contends that the facts of this case do not justify allowing the jury to consider the issue of punitive damages. While the facts may show that servicing errors were made, Nationstar did not act in an outrageous manner. Plaintiff will have a difficult time identifying by name any Nationstar employee who intended to harm Plaintiff with some evil motive. Nationstar may have made mistakes but it was not recklessly indifferent to Plaintiffs rights; otherwise it would not have corrected all of the claimed servicing errors. Thus, punitive

damages are not warranted either as a matter of law (argument to the court) or as a matter of fact (argument to the jury, if necessary).

If the jury is allowed to consider the issue, however, Nationstar is entitled to separate jury instructions on the nature of the proof required and the standards that must be met.

Finally, the Court must consider this constitutional limitations applicable to jury awards of punitive damages, which generally preclude awards higher than a certain ratio of actual damages. With the actual damages here subject to multiple challenges and no clearly identifiable actual loss of a significant sum, the punitive damages ceiling is not a high one. Any jury award of punitive damages will need to be reviewed post-trial by the Court.

DATE: October 27, 2015 Respectfully submitted,

*/s/ Jeffrey M. Tillotson*

Jeffrey M. Tillotson, P.C. (*Pro Hac Vice*)
Federal Bar No. 20039200T
jmt@lynnllp.com
Ben A. Barnes
Texas Bar No. 24088198
bbarnes@lynnllp.com
**LYNN TILLOTSON PINKER & COX, L.L.P.**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
(214) 981-3800 Telephone
(214) 981-3839 Facsimile

Kevin M. Abel, #39568
Rhiana A. Luaders, #56535MO
Amy E. Breihan, #65499MO
**BRYAN CAVE LLP**
One Metropolitan Square
211 N. Broadway, Suite 3600
St. Louis, Missouri 63102
(314) 259-2000 Telephone
(314) 259-2020 Facsimile

**ATTORNEYS FOR DEFENDANT**
**NATIONSTAR MORTGAGE LLC**

**CERTIFICATE OF SERVICE**

      I hereby certify that counsel of record are being served on October 27, 2015 with a copy of this document *via* the Court's CM/ECF system.

      HUMPHREYS WALLACE HUMPHREYS, P.C.
      David Humphreys, OBA #12346, *Pro Hac Vice*
      Luke J. Wallace, OBA #16070, *Pro Hac Vice*
      9202 South Toledo Avenue
      Tulsa, Oklahoma 74137
      918-747-5300 Telephone
      918-747-5311 Facsimile

      Robert T. Healey, Jr., MO Bar No. 34138
      Healey Law LLC
      640 Cepi Drive, Suite A
      Chesterfield, Missouri 63005
      636-563-5175 Telephone
      636-590-2882 Facsimile
      *ATTORNEYS FOR PLAINTIFF*

Jeffrey M. Tillotson, P.C.

4841-7741-4954, v. 3