IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| 1.  JEANNIE K. MAY, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No.: 4:14-CV-578-TCM |
| | ) |
| 1.  NATIONSTAR MORTGAGE, LLC. | ) |
| | ) |
| Defendant. | ) |

**Plaintiff's Response in Opposition to Defendant's Motions in Limine 1-6**

Comes now the Plaintiff and hereby responds and objects to the Defendant's Motions in Limine 1-6.  (Docket 134).

**I.     The Court Should Deny Nationstar's Motion in Limine No. 1 and Admit Highly Probative Testimony about Nationstar's Virtually Identical Handling of Complaints from Jennifer Prostredny**

Plaintiff's trial brief addressed the relevance and admissibility of Nationstar's dealings with Jennifer Prostredny at length.  Plaintiff's Trial Brief, Docket No. 116, at 21-29.  Ms. Prostredny, like Ms. May, emerged from a successfully completed bankruptcy only to have Nationstar claim she was in default.   Like Ms. May, she repeatedly wrote, called, and submitted proof of her payments and cure in bankruptcy.  Like Ms. May, she endured demands that she "prove" she was current; received boilerplate responses to her written complaints which showed Nationstar had not even reviewed the materials she sent, much less conducted a reasonable investigation; had Nationstar reject her payments; had Nationstar threaten foreclosure and impose a "trial" modification that would capitalize the same arrears she was disputing; and suffered similar emotional distress.   Moreover, as in May's case, a Nationstar Vice President claimed her case was unique, and that such profound, extended errors "don't happen."

1

Plaintiff's trial brief explains that Prostredny's videotaped testimony, together with documents describing her complaints (both to Nationstar and to external entities like the Better Business Bureau), Nationstar's inadequate responses, and Nationstar's ultimate admission of error, are relevant and highly probative.  The evidence establishes a pattern and practice of noncompliance with RESPA, and frequent, persistent noncompliance with the FDCPA, both serving as the factual basis for statutory damages.  Also, this witness is relevant to punitive damages under the MMPA, FCRA, and Slander of Title and Invasion of Privacy claims, because they show reprehensibility and the harm likely to result from Nationstar's practices.  They show Nationstar's awareness of the harm its conduct was causing, and undermine Nationstar's core defense that it was a "fluke" for Nationstar's accounting error to go undetected and unremedied in response to repeated complaints.  The events are close in time, the fact of Nationstar's ongoing failures is not subject to genuine dispute, and the testimony is not unduly prejudicial.  The evidence is admissible under the Eighth Circuit's inclusive standard.

Nationstar's motion *in limine* offers no argument that rebuts Plaintiff's strong case for admission.   Nationstar claims Prostredny's testimony is impermissible "character evidence," but its authority shows the opposite.  In **Roderick v. Wal-Mart Stores East, LP**, 07-0768CVWREL, 2010 WL 1994804, at *2 (W.D. Mo. May 14, 2010), the defense improperly sought to admit the plaintiff's personal history of falling, without offering a single purpose for the evidence other than showing the plaintiff's propensity to fall.  *Id.*  Here, in contrast, the evidence proves elements of multiple claims and rebuts Nationstar's primary defense of unique, runaway error.

Nationstar argues the evidence cannot show "intent" or "absence of mistake" under Rule 404(b) because it doesn't involve the same employees.  But a corporate entity can have "intent"

2

or notice through its agents and employees, even if those agents are different individuals. *See* **Buehrle v. City of O'Fallon, Mo.,** No. 4:10CV00509 AGF, 2011 WL 529922, at *3 (E.D. Mo. Feb. 8, 2011)("The corporation as a fictional entity can never know that a fact is true except to the extent its employee or agent does. Therefore, knowledge of [corporate] employees is 'imputed to the corporation itself.')(citation omitted); *see also* 8th Circuit Model Jury Instruction 5.23 ("Agency").

Finally, Nationstar argues that Plaintiff has not shown Nationstar had a "semi-automatic," routine practice of failing to investigate complaints sufficient to show that it did so in *this* case under Fed. R. Evidence 406. But May is using Prostredny's experience (and her own) to prove that Nationstar had a pattern and practice of failing to investigate and marching toward foreclosure, not the other way around. She does not rely on Rule 406.

## II.    The Court Should Deny Nationstar's Motion in Limine No. 2 Because It Is The Jury's Province To Determine Whether She Adequately Proved Her Damages

### A.    Plaintiff's Evidence About The Amount Of Wrongful Charges Added to Her Secured Debt And Testimony About the Value of Her Home Are Admissible

Nationstar argues May has "no competent evidence" showing she has lost equity in her home. She does. First, Plaintiff will present evidence that to this day, Nationstar has imposed on May charges not warranted by contract. Those wrongful charges necessarily reduce her stake in the home, as she would have to pay off those wrongful charges secured by the lien.

Second, May can testify that her home lost value during the years of her ordeal. She will testify that she had hoped and expected to move from her home once she emerged from bankruptcy in early 2013. Instead, she could not even consider moving because Nationstar almost immediately began imposing unlawful fees. She knew 1) Nationstar's derogatory credit reporting would make it impossible for her to get a loan; and 2) Nationstar would wrongfully

3

demand thousands more than she owed to pay off the loan. She will testify that during those two years, the value of her home dropped.

May's testimony is admissible. "In Missouri, it is a general rule that the owner of property is competent to testify as to its value." **Pecher v. Pecher**, 398 S.W.3d 580, 585 (Mo. Ct. App. 2013) *overruled on other grounds by* **Rallo v. Rallo**, No. ED 101746, 2015 WL 3485898 (Mo. Ct. App. June 2, 2015)(*citations omitted);* **Tull v. Hous. Auth. of City of Columbia**, 691 S.W.2d 940, 943 (Mo. Ct. App. 1985)("an owner may always testify regarding his property's value"). As one court explained, an owner may testify to the value of his property

> … even though he does not qualify as an expert. **Esmar v. Zurich Insurance Co.,** 485 S.W.2d 417, 423-424(8, 9) (Mo.1972); **State ex rel. State Highway Commission v. Northeast Building Company**, 421 S.W.2d 297, 301(3) (Mo.1967). The qualification of an owner as a witness to the reasonable value of his property is usually held to rest on the assumption that an owner is familiar with the characteristics of his property, has some acquaintance with its actual and potential uses and some experience in dealing with it. Generally, this competency is assumed whether the property taken or damaged is a parcel of realty, **United States v. Sowards,** 370 F.2d 87, 92(15) (10th Cir. 1966)…

**Casada v. Hamby Excavating Co.,** 575 S.W.2d 851, 854-55 (Mo. Ct. App. 1978)(*additional citations omitted).* An owner is presumed competent to testify. *Id.* Nationstar can try to rebut that presumption at trial, but cannot exclude the evidence altogether.

Here, Nationstar has not pointed to any particular evidence that May's testimony would be unreliable. In fact, Ms. May's assessment that the value of the property was declining is consistent with that of Nationstar's own hired real estate broker's early 2014 price opinion, that the neighborhood market was "declining/depreciating," and that most sales in the neighborhood were foreclosures, driving prices down. Plaintiff's Exh. 125. The testimony is admissible.

4

**B.     Plaintiff Should Be Permitted To Testify About Wages She Lost After Temporarily Quitting Work Because Of Stress And Anxiety Brought About by Nationstar**

By mid-2014, May's level of stress and misery had become unmanageable.  At that point, she was convinced that she had done everything within her power to reduce the impact of Nationstar's foreclosure threats and efforts to take her home.  Nonetheless, given the uncertainty, her overall level of distress remained unmanageable.  She had to take action to reduce the stress that was affecting her well-being.  She decided to take early retirement in May of 2014 to eliminate at least the one source of stress she *could* control.  She returned to work in December, 2014, once she was able, but was forced to accept a lower paying job at a different department at Washington University.  She will testify about the difference in hourly wages between the two jobs.  She will explain that after her bankruptcy, she was forced to take financial planning seriously, and had concrete plans for how long she expected to work and how long she had planned to work and save before she retired.  She will testify to the dollar difference between her retirement contributions in the old positions and those she can afford now.

### 1.     May's Estimate of Her Damages Is Sufficiently Certain

May's testimony will be sufficient for the jury to make an "intelligent estimate" of the harm she suffered and quantify it with "reasonable certainty:"

> Under general principles of Missouri law, [plaintiff] is required to prove the existence and amount of its damages with reasonable certainty. See **Forklifts of St. Louis, Inc. v. Komatsu Forklift**, *USA,* Inc., 178 F.3d 1030, 1034 (8th Cir.1999); **Aluminum Prods. Enters., Inc. v. Fuhrmann Tooling & Mfg. Co***.,* 758 S.W.2d 119, 121 (Mo.Ct.App.1988). "A party attempting to prove damages need only place before the jury 'the relevant facts tending to show the extent of damages,' enabling the jury 'to make an intelligent estimate of [damages] as circumstances of the case will admit.' " **C.L. Maddox, Inc. v. Benham Group, Inc***.,* 88 F.3d 592, 601 (8th Cir.1996) (quoting **Morris v. Perkins Chevrolet, Inc.,** 663 S.W.2d 785, 788 (Mo.Ct.App.1984)). Nonetheless, "the evidence must not leave the matter [of damages] to speculation." **Haggard v. Mid–States Metal Lines, Inc.***,* 591 S.W.2d 71, 77 (Mo.Ct.App.1979). "A party should be fully compensated for its loss, but not recover a windfall." **Ameristar Jet Charter, Inc. v.**

**Dodson Int'l Parts, Inc.,** 155 S.W.3d 50, 54 (Mo.2005) (en banc). "The ultimate test for damages is whether the award will fairly and reasonably compensate the plaintiff for [its] injuries." **Sampson v. Missouri Pac. R. Co.**, 560 S.W.2d 573, 588 (Mo.1978) (en banc).

**Lift Truck Lease & Serv., Inc. v. Nissan Forklift Corp., N. Am.**, No. 4:12-CV-153 CAS, 2013 WL 3092115, at *6 (E.D. Mo. June 18, 2013). Well-settled state and federal law make clear that this standard can be met here: "While the plaintiff is required to prove with certainty the fact of damage, the same degree of certainty is not required with regard to the amount of damages." **Refrigeration Ind., Inc. v. Nemmers**, 880 S.W.2d 912, 920 (Mo.Ct.App.1994); *see also* **Children's Broad. Corp. v. Walt Disney Co.,** 245 F.3d 1008, 1016 (8th Cir. 2001)("Once the fact of loss has been shown, the difficulty of proving its amount will not preclude recovery so long as there is proof of a reasonable basis upon which to approximate the amount.").

The measure of lost future pay is "necessarily uncertain" and "by nature speculative," **Rasmussen v. Quaker Chem. Corp.,** 993 F. Supp. 677, 684 (N.D. Iowa 1998); nonetheless, no expert testimony is required to make a submissible calculation of damages. In **Brenneke v. Department of Missouri, Veterans of Foreign Wars of U.S. of America**, 984 S.W.2d 134 (Mo. App. 1998), for example, the plaintiff presented her own testimony about her past and expected future wages at her old employer, and the wages where she had been able to find work. *Id.* at 141. The Missouri Court of Appeal found her testimony, while not exact, was sufficient to support the jury's award for future reduced wages *Id.* at 141-142. The Court observed that she clearly had a basis for her knowledge, and "if the matter is within the comprehension of the jury, then an expert is not required in order to make a submissible case." *Id.* at 141.

> **2.    Plaintiff's Testimony That She Left Work Because She Could Not Handle The Anxiety and Depression Caused Primarily By Nationstar Is Sufficient To Submit Her Damages To the Jury**

Nationstar offers a grab-bag of arguments that May cannot show a causal connection between Nationstar's efforts to take her house and her stress-driven decision to take early retirement.  Nationstar is wrong in fact and law.

First, Nationstar suggests that May cannot prove causation because she admits her decision to leave had more than one cause (i.e., her decision was also based on her difficult relationship with a new supervisor).  But Missouri's well settled law, distilled into Missouri Approved Instruction 19.01, "Verdict Directing Modification—Multiple Causes of Damage," allows May to argue that Nationstar is liable even if there are multiple causes at issue.  MAI 19.01 allows the Court to instruct the jury that tortious conduct at issue "directly caused or directly contributed to cause damage to plaintiff," or, alternately, that such conduct "either directly caused damage to plaintiff or combined with [….] to directly cause damage to plaintiff."  MAI 19.01 (7th Ed.).   As one appellate court recently explained, the instruction is appropriate in any context where there are multiple causes of damage**. Hurst v. Kansas City, Missouri Sch. Dist.**, 437 S.W.3d 327, 335 (Mo. Ct. App. 2014), as modified (May 27, 2014), *and cases cited therein.*

Nationstar also suggests that Plaintiff cannot claim lost wages because she left her job *after* she filed this suit in February 2014.[1]   Nationstar ignores the September 18, 2014 filing of the 2nd Amended and Supplemental Complaint (Docket # 56) that alleged additional claims of violation of the MMPA, RESPA and the FCRA for conduct by Nationstar continuing from

---

[1]  Nationstar fails to mention that May's suit and TRO removed only the immediate threat of a foreclosure sale;  Nationstar refused her monthly mortgage payments even after it ostensibly "fixed" her account, continued to charge fees she didn't owe, and made its credit reporting even worse over the summer and fall of 2014.

7

March of 2014 until at least August of 2014.  Nationstar continued its wrongful servicing conduct well after suit was filed and the mental and physical harm Nationstar inflicted continued over time.  May will testify that her emotional distress was intolerable at the time she made the decision to leave work.  Nor does it matter that May "voluntarily" retired; a jury must weigh and evaluate May's testimony that she felt forced to resign in order to cope.

Nationstar seems to argue Plaintiff cannot recover for the damage to her property interest or for future harm under any of her causes of action.   But Plaintiff asserts regular tort claims for invasion of privacy and slander of title; her MMPA claim is analogous to a tort claim as well. *See* MIA 39.01 (referring to punitive damages instruction for negligence).  "Under general Missouri tort law, a plaintiff may recover damages the plaintiff sustained and is reasonably certain of sustaining in the future as a result of the defendant's wrongful conduct." **In re Genetically Modified Rice Litig.,** 666 F. Supp. 2d 1004, 1029-30 (E.D. Mo. 2009 ). This simple formulation is reflected in Missouri's form instruction for personal and property damages.   MAI 4.01.  Future damages, economic or emotional, may be a "direct result" of wrongful conduct. *See, e.g.,* **Jacobs Mfg. Co. v. Sam Brown Co.**, 19 F.3d 1259, 1263, 1265 (8th Cir. 1994)(both out of pocket losses and lost profits can be "actual damages" that are a 'direct result" of fraudulent misrepresentation);  **Becker v. Crank**, No. 1:12-CV-111SNLJ, 2014 WL 5849371, at *4 (E.D. Mo. Nov. 12, 2014)(in wrongful arrest case, instruction allowing award of future emotional distress damages was warranted where the plaintiff testified that arrest affected him almost daily);  **Corizon, Inc. v. Wexford Health Sources, Inc**., No. 4:10 CV 2430 DDN, 2013 WL 791788, at *4 (E.D. Mo. Mar. 4, 2013), *citing*  **Andray v. Adry–Mart, Inc.,** 76 F.3d 984, 988 (9th Cir.1995)(cost of prospective corrective advertising properly included in "actual," compensatory damages for defamation).

8

Nationstar claims Plaintiff is entitled only to "actual" damages rather than "consequential" damages.[2] This taxonomy of damages isn't particularly helpful for determining causation requirements, but May is entitled to "consequential" damages in any event, as they are clearly available under the MMPA and contract claims:

> Missouri courts have recognized that claims of breach of contract, fraud, and violations of the MMPA are not inconsistent legal theories of recovery and do not involve inconsistent remedies; thus, a plaintiff asserting all of those claims is not required to make an election of remedies and may recover consequential damages in addition to actual damages and benefit-of-the bargain damages. *Trimble v. Pracna,* 167 S.W.3d 706, 711 (Mo. banc 2005); *Davis v. Cleary Building Corp.,* 143 S.W.3d 659, 669 (Mo.App. W.D.2004). However, if the damages for all of those claims are the same, the damages award merges. *Davis,* 143 S.W.3d at 670.

**Ullrich v. CADCO, Inc.,** 244 S.W.3d 772, 779 (Mo. Ct. App. 2008)(allowing consequential damages in MMPA case). Ultimately, "the semantics of causation" are "less important in Missouri than in most jurisdictions," **Callahan v. Cardinal Glennon Hosp.**, 863 S.W.2d 852, 862–63 (Mo. banc 1993), as Missouri does not use terms like "proximate cause," "but for causation," or "substantial factor" when instructing the jury. "We merely instruct the jury that the defendant's conduct must "directly cause" or "directly contribute to cause" plaintiff's injury." *Id.;* **Thomas v. McKeever's Enterprises Inc.,** 388 S.W.3d 206, 212-13 (Mo. Ct. App. 2012)(same) *see also* **United States v. Wipf**, 397 F.3d 632, 636 (8th Cir. 2005)(Instructing a jury that harm must have occurred as "a result of" defendant's conduct is a sufficient instruction

---

[2] "Actual damages are compensatory and are measured by the loss or injury sustained" as a direct result of the wrongful act. **Stiffelman v. Abrams***,* 655 S.W.2d 522, 531 (Mo. banc 1983). Consequential damages "are those damages naturally and proximately caused by the commission of the breach and those damages that reasonably could have been contemplated by the defendant at the time of the parties' agreement." **Ullrich [v. CADCO, Inc]***,* 244 S.W.3d [772, 779 (Mo. App. 2008)]. Finally, benefit-of-the-bargain damages, also called lost profits damages, are the "net profits a plaintiff would have realized" had the contract not been breached. **Ameristar Jet Charter, Inc. v. Dodson Int'l Parts, Inc***.,* 155 S.W.3d 50, 54 (Mo. banc 2005). There are situations in which all three types of damages could be deemed appropriate by a finder of fact, but that is not always the case. *See* **Davis [v. Cleary Building Corp.***,* 143 S.W.3d 659, 670 (Mo. App. 2004)." **Catroppa v. Metal Bldg. Supply, Inc.,** 267 S.W.3d 812, 817-18 (Mo. Ct. App. 2008).

on proximate cause). At this juncture, it is up to the jury to weigh the evidence and determine whether has shown that Nationstar's wrongful conduct forced her to leave work.

### C. May Does Not Seek Damages on Behalf Of Her Family Members

May does not seek damages on behalf of others. She will explain that seeing her son distraught and anxious caused *her* emotional distress. Her son's testimony about his own mental state, if presented, will support May's claim for her own upset that she could not care for and caused her child distress – probably a near-universal maternal experience. A limiting instruction will obviate any prejudice or confusion about whose damages are at issue.

### III. The Court Should Deny Nationstar's Motion in Limine No. 3 and Admit Highly Probative Testimony about Credit Denial and Credit Rating.

May contends Nationstar's false credit reporting was a substantial factor in her being declined by World's Foremost Bank for a Cabela's credit card. May sent Equifax a dispute of information furnished by Nationstar contained in her credit report. She disputed that she was between 120 and 180 days late between March and October 2013. Nationstar's response to her dispute was to change the time period of its negative reporting from 9 months to 22 months. Nationstar's corporate representative admitted in his deposition that this information was inaccurate. She was denied credit on August 20, 2014, during the period Nationstar inaccurately reported.

To be entitled to damages for a violation of the FCRA based on credit denial, May need only prove Nationstar's reporting was a "causal factor of the credit denial." **Fahey v. Experian Information Solutions, Inc.,** 571 F.Supp.2d 1082, 1089 (E.D.Mo. 2008). May must simply show it was a "'substantial factor in bringing about the denial of credit'" and need not show "'sole cause'" or "'eliminate the possibility that other factors may have also influenced the credit denial.'" **Fahey**, 571 F.Supp.2d at 1089-90 (quoting, **Philbin v. TransUnion Corp**, 101 F.3d

10

957, 969 (3rd Cir. 1996)). The fact that Naitonstar was not the "sole factor" has no bearing on her claim.

In *Fahey*, the consumer presented evidence from which a jury could determine he was the high bidder on real property but could not make the purchase due to inaccurate credit reporting. This evidence included a denial letter by the mortgage broker and testimony of the potential creditor who testified that it looked at the credit report in question and required full payment of the amount being falsely reported before funding the loan. **Id**. at 1089. Testimony by the creditor included testimony of other factors in denying the loan. **Id**.

The 3rd Circuit stated "We deem it sufficient that, as with most other tort actions, a FCRA plaintiff produce evidence *from which a reasonable trier of fact could infer* that the inaccurate entry was a 'substantial factor' that brought about the denial of credit." **Philbin v. TransUnion Corp.**, 101 F.3d 957, 968 (3rd Cir 1996)(abrogated on other grounds)(emphasis added). It went on to state "Courts have recognized that where a decision-making process implicates a wide range of considerations, all of which factor into the ultimate decision, it is inappropriate to saddle a plaintiff with the burden of proving that one of those factors was *the* cause of the decision. **Id**. at 969 (emphasis in original). It made this decision after stating that depositions or affidavits from the people making the credit decision would have made the case stronger but were not required. **Id**. Unlike the Plaintiff in *Philbin*, May has such evidence and Defendant is attempting to bar its presentation to the jury.

In deposition, World's Foremost Bank testified that Nationstar's negative reporting was a factor in its decision and that May fell just 1 point short of approval. Huss testimony at 17:23-19:23(Bankruptcy filing more than 2 years prior no longer automatic decline); 21:20-22:7(threshold score is 620); 22:13-23:4 (August 20, 2014 denial letter); 27:12-28:4 (Nationstar

11

reporting serious delinquency and bankruptcy not an automatic decline factor); 36:8-24 ("placed for collection" is derogatory score was 1 point below threshold); 37:16-38:5(derogatory report brings score down, positive report brings score up).  The existence of a 1 point discrepancy between her score and the required score to qualify creates a reasonable inference that the negative reporting by Nationstar was a substantial factor in the decision costing May that one point necessary to make the cut.  The jury must decide causation here.

Multiple other courts have made similar decisions.   **Ferrarelli v. Federated Fin. Corp. of America**, 2009 WL 116972, at *7 (S.D.Ohio,2009); **Enwonwu v. Trans Union, LLC**, 364 F.Supp.2d 1361, 1366 (N.D.Ga.2005); **Reed v. Experian Information Solutions**, 321 F.Supp.2d 1108, 1115 (D.Minn.2004), **Richardson v. Fleet Bank of Mass.**, 190 F.Supp.2d 81, 88 (D.Mass.2001); **Garrett v. TransUnion, LLC**, 2006 WL 2850499, *11, n. 5 (S.D.Ohio Sept.29, 2006) (unpublished). **Cahlin v. General Motors Acceptance Corp., 936 F.2d 1151**, 1161 (11th Cir.1991).

In **Enwonwu**, 364 F.Supp.2d at 1366, the Northern District of Georgia stated "For example, in some instances the inaccurate entry and another factor may each, considered separately, be insufficient to have caused the denial of credit but when taken together are sufficient. Each may then be considered a substantial factor in bringing about the denial of credit and therefore a cause of plaintiff's injury." **Id**. (citing, Keeton et al., Prosser and Keeton on Torts § 41, at 266-68 (5th ed.1984)).

This is just such a case, where the other negative items on the report, i.e. bankruptcy, were not sufficient in themselves to result in the denial but the negatives taken together, including Nationstar's inaccurate reporting, were sufficient to push her score 1 point below the threshold making each of these items a substantial factor bringing about the denial of credit.

Therefore, Nationstar's reporting was a cause of May's injury.  This is further supported by the testimony of Equifax and Defendant's argument that "Plaintiff's credit file revealed other negative credit information that could have affected her credit rating and score" is not a bar to the presentation of Equifax's testimony regarding the denial of credit.

Defendant's reference to "credit rating" is too vague to address properly.  To the extent credit rating references any other testimony by Equifax and the documents it produced, this testimony, in addition to being relevant to the denial of credit, is also relevant because it lays a foundation for elements of May's FCRA claim.  These elements include receipt of the dispute by Equifax, forwarding the dispute to Nationstar, the information about the dispute that was communicated to Nationstar, and Nationstar's response to the dispute including the information furnished by Nationstar to Equifax after receipt of the dispute.  15 U.S.C. § 1681s-2(b) (duties of furnishers); **Anderson v. EMC Mortg. Corp.**, 631 F.3d 905, 908-09 (8th Cir. 2011); **Gorman v. Wolpoff & Abramson, LLP**, 584 F.3d 1147, 1155-56 (9th Cir. 2009); **Johnson v. MBNA America Bank, NA**, 357 F.3d 426, 430-31 (4th Cir 2004)

Defendant's motion to bar the testimony of the Doug Huss (corporate representative of World's Foremost Bank) and LaTonya Munson (corporate representative of Equifax) from consideration by the jury is not founded in either case law or the evidence and should be denied.

**IV.    The Court Should Deny Nationstar's Motion in Limine No. 4 and Admit Highly Probative Testimony by Dr. Maestas Regarding May's Emotional Distress**

Defendant seeks to bar any testimony by Dr. Maestas pertaining to his diagnosis of May's emotional distress.  Defendant previously sought to bar this testimony and the Court denied its motion.  Dockets 85 and 96.   Nationstar's motion is misleading and confusing. Zero authority is provided to the Court indicating "sole cause" is a legal standard for the Court.

The actual standards for causation are "directly caused or directly contributed to cause damage to plaintiff" (MAI 19.01)[3] and "substantial factor" **Morrow v. Greyhound Lines, Inc.**, 541 F.2d 713, 718 (8th Cir. 1976)(see also, **Rozark Farms, Inc. v. Ozark Border Elec. Co-op.**, 849 F.2d 306, 310 (8th Cir. 1988)).

There have been similar holdings by Federal Courts when determining causation of emotional distress for claims under federal law.  The Eighth Circuit has stated "'[A]n actor's conduct is a proximate or legal cause of harm to another if the conduct is a 'substantial factor' in producing the harm....'" **Gremmels v. Tandy Corp.,** 120 F.3d 103, 106 (8th Cir. 1997).  It also stated "To satisfy the element of causation, a plaintiff need not prove that the defendant's conduct was the only cause, the necessary cause, or even the most important cause of the plaintiff's damages. The law requires that a plaintiff show only that the defendant's conduct constituted a substantial factor in producing the plaintiff's injury." **Pelster v. Ray**, 987 F.2d 514, 524 (8th Cir. 1993).

Finally, the Western District of Missouri stated "Plaintiffs can make their case if they 'show that defendants' sex discrimination and sexual harassment were substantial factors in causing their emotional harm. . . . However, what . . . plaintiffs [do] not have to prove [is] that other factors did not contribute to that harm.'" **Robinson v. Canon U.S.A.,** 2000 WL 564203, at *1 (W.D.Mo., 2000) (quoting, **Jenson v. Eveleth Taconite Co.,** 130 F.3d 1287,1294 (8th Cir. 1997), *cert. denied sub nom.* **Oglebay Norton Co. v. Jenson**, 524 U.S. 953(1998)).

Dr. Maestas' diagnosis of May suffering from "situational anxiety" is based on his years of experience in treating patients and his observation and treatment of May over several years. Dr. Maestas testified that May first began complaining regarding anxiety in September of 2013.

---

[3] This instruction is intended to be used regardless of the cause of action and regardless of whether the other cause of damage was a party.  MAI 19.01 at Notes on Use # 2; **Hurst v. Kansas City, Missouri School Dist.**, 437 S.W.3d 327 (Mo.App. 2014).

Maestas depo. at 35:12-36:6. Dr. Maestas further testified that this anxiety included fear and feeling threatened and is directly related to fear of losing her home. Id. at 36:10-38:9. Dr. Maestas diagnosed Ms. May with situational anxiety and depression with specific triggers including the major trigger of the threat to her home. Id. at 43:9-46:13. He determined the threat to her home was the major trigger because the stressors at work had existed for some time without triggering the anxiety and depression. Id. This situational anxiety and depression were medically significant and required treatment with prescription medications. Id. at 47:18-48:10.

Defendant provides no legal authority for this second effort to bar Dr. Maestas testimony regarding "situational anxiety." Instead, it misrepresents Dr. Maestas testimony by stating "And Dr. Maestas further agreed that he could not pinpoint Nationstar's actions as the proximate cause of her stress." Docket 134 at p. 6. Dr. Maestas was not asked if Nationstar's conduct was the proximate cause of May's stress. Instead, he was asked if he agreed that he could not state "the sole cause of her situational anxiety was her mortgage company." Maestas Depo at 75:22-76:1 Dr. Maestas also testified "I don't believe I made the diagnosis of situational anxiety based upon what was going on at her work. I think that was based more what was going on with her finances and her house because that was predominantly what we would be talking about." Maestas depo at 75:6-11.

Nationstar's conduct need not be the sole cause of May's emotional distress in order to recover damages for emotional distress under her state and federal claims. Defendant's attempt to bar Dr. Maestas' testimony because it fails to establish sole cause is not well taken and should be denied.

## V. The Court Should Deny Nationstar's Motion in Limine No. 5 and Admit Highly Probative Testimony about Prostredny's BBB Complaints.

Defendant seeks to bar any evidence of complaints by other borrowers to the BBB. Except for the testimony of Ms. Prostredny, which includes her complaint to the BBB addressed in response to MIL No. 1, Plaintiff has not listed any other BBB complaint in the exhibit list nor did she testify regarding BBB complaints in her deposition.

To the extent the Court allows Ms. Prostredny's testimony to be presented to the jury, her BBB complaint is not presented for the truth of the matter asserted but to show Defendant's knowledge, motive and lack of mistake and is not hearsay. F.R.E. 801. In addition, her complaint and testimony refute Defendant's repeated claims that what happened to May was a one-time error that has never happened to anyone else.

In discussing the admissibility of BBB complaints the Eastern District of New York has stated:

> The BBB complaints are also admissible under Rule 807 given their inherent "guarantees of trustworthiness" as corroborating reports of the Defendants' misrepresentations, which were sent spontaneously by unrelated individuals to a government agency. *See FTC v. Magazine Solutions, LLC,* Civil Action No. 7–692, 2009 WL 690613, at *1 (W.D.Pa. Mar.16, 2009) (admitting consumer complaints to BBB in part because "[t]he consistency of the representations" described in consumers' letters reinforced the trustworthiness of the complaints). Furthermore, "reasonable effort would not produce evidence that is more probative" than contemporaneous reports of Defendants' misconduct, and admitting the BBB complaints will therefore best serve the interests of justice. *See FTC v. Figgie Int'l Inc.,* 994 F.2d 595, 608–09 (9th Cir.1993); *see also FTC v. Cyberspace.com,* Civ. No. 1806, 2002 WL 32060289 (W.D.Wa. July 10, 2002) (quoting *Figgie* and admitting emails and letters of complaint under Rule 807), aff'd, 453 F.3d 1196 (9th Cir.2006).

**F.T.C. v. Instant Response Sys., LLC**, 2015 WL 1650914, at *5 (E.D.N.Y. Apr. 14, 2015). The Prostredny BBB complaint is contemporaneous evidence of Ms. Prostredny's state of mind and of her understanding of Nationstar's conduct created spontaneously by an unrelated individual at a point in time when Prostredny did not know that May's case existed. Its

16

consistency with the evidence presented regarding Nationstar's actions in this matter support its trustworthiness and it should be admitted.

VI.  **The Court Should Admit Testimony From May's Co-workers And Son About Overheard Conversations With Nationstar**

May will likely present testimony of Karen Moore and Bill Tapp, Plaintiff's coworkers at Washington University, as well as her son, testify that they could hear her humiliating conversations with Nationstar, protesting that she was current on her mortgage.   These conversations are not hearsay, as they are not presented for the truth of the matter asserted.  Instead, they go to show that May's fear that she was being forced to air her embarrassing, private affairs involuntarily at her workplace were realistic:   her coworkers could, in fact, hear her conversations and understand what was going on.   The same coworkers are percipient witnesses who will testify to the effects of these conversations on Jeannie May, including the toll and the changes in her during this period, corroborating her emotional distress.

Wherefore, Plaintiff respectfully requests that the Court deny Defendant's Motions in limine.

Respectfully submitted,

**HUMPHREYS WALLACE HUMPHREYS, P.C.**

By:  /s/ Luke Wallace
David Humphreys, OBA # 12346, *Pro Hac Vice*
Luke J. Wallace, OBA # 16070, *Pro Hac Vice*
Paul Catalano, OBA # 22097, *Pro Hac Vice*
9202 South Toledo Avenue
Tulsa, Oklahoma 74137
918-747-5300 / 918-747-5311 Facsimile

Elizabeth S. Letcher, CA Bar No. 172986, *Pro Hac Vice*
Law Offices of Elizabeth S. Letcher
60 29th St, No. 221
San Francisco, CA  94110
415-643-4755 / 415-738-5400 Facsimile

        Robert T. Healey, Jr., MO Bar No. 34138
        Healey Law LLC
        640 Cepi Drive, Suite A
        Chesterfield, Missouri  63005
        636-563-5175 / 636-590-2882 Facsimile
        **ATTORNEYS FOR PLAINTIFF**

## **CERTIFICATE OF SERVICE**

      I hereby certify that on the 10th day of November, 2015, I electronically transmitted the foregoing document to the Court Clerk using the ECF System for filing.  The Court Clerk will transmit a Notice of Electronic Filing to the following ECF registrants:

Kevin M. Abel
Amy E. Breihan
Rhiana A. Luaders
Bryan Cave LLP
One Metropolitan Square
211 N Broadway, Ste 3600
St. Louis, MO  63102

Jeffrey M. Tillotson
Lynn Tillotson Pinker & Cox LLP
2100 Ross Av, Ste 2700
Dallas, TX  75201
*Attorneys for Defendant Nationstar Mortgage LLC*

        _/s/ Luke Wallace_____